S. D. Foss *et al.*

*v.*

R. F. Cummings *et al.*

*Filed at Ottawa January 16, 1894.*

1. CONTRACTS — *in restraint of trade.* All compacts between merchants, speculators or any class of men to elevate or depress the market are injurious to the public interest, and in restraint of trade. When such a purpose is apparent in a contract it strikes the agreement with nullity. Such a combination of dealers is nothing less than a conspiracy against trade, entered into for selfish purposes, and tending to make the poor poorer and the rich richer. Such design will not be furthered by the courts.

2. It makes no difference that the agreement is only in partial restraint of trade. If the public is injuriously affected (and that is necessarily so when the combination tends to increase the price of a commodity) it is illegal.

3. SAME—*to "corner" the market.* A combination of several parties to enhance the price of corn, by making large purchases and preventing the fair selling thereof, whereby an immense lot of corn is put into the hands of a firm in the combine and thus force up the price of corn in the market, is contrary to public policy, and no party to the agreement can maintain an action for services growing out of the transaction.

4. In an action by commission merchants against a defendant, to recover for moneys paid out, and for commissions, storage, insurance, interest and losses upon certain corn transactions, in which they acted as the defendant's agents, the court held as law a proposition that if the corn was purchased and sold by the plaintiffs, and advances were made thereon, and insurance was also paid and advanced by them thereon, in pursuance and execution of an agreement, understanding or combining by the defendant to enhance the price of corn above what the market price thereof would have been if left free from manipulation, by buying the cash corn coming into the Chicago market and by keeping back and from that city market corn which would otherwise have been brought to such market for sale, and the plaintiffs were parties to or assented to and aided in such agreement, and acted in the premises as brokers or agents for the defendant in pursuance of such scheme, etc., then there can be no recovery by the plaintiffs for losses they may have sustained in the purchase and sale of said corn, or for advances made or expenses incurred, etc.: *Held,* that the proposition expressed the law correctly.

23—149 ILL.

5. Evidence—*dependent on the issues—proving contract unlawful.* In an action to recover under an illegal contract for the buying and selling of corn, as agent, and for commissions, etc., the plaintiff is not bound to offer proof of claims not made by him, but the defendant will have the right to disprove plaintiff's claims, if he can. The defendant will have the right to introduce testimony tending to show that the purchase and sales of corn were alike parts of an unlawful attempt to force the corn market, especially when the evidence of both parties does not tend to prove independent transactions, but parts of a single scheme.

6. Where issues are formed on the allegations of the plaintiff's declaration, with which is filed a copy of the account between the parties, the competency of the evidence offered by the defendant, tending to show an illegal combination and agreement to force the market for corn and enhance its price, will not depend upon the items of that account.

7. Same—*part of instrument offered—all may be required.* Where it was agreed between the parties that either of them might read from the transcript of the record certified to the Appellate Court, any part of the evidence offered by them, or either of them, at a former trial, subject to all objections to its admissibility, the plaintiff insisted upon reading only so much of the former testimony as related to purchases of grain, and objected to the reading of all the other parts thereof. The court permitted the plaintiff to elect what portions he would read, but overruled the objection to reading the other parts of the record : *Held,* that the court properly disallowed the objection.

Appeal from the Appellate Court for the First District ;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. Frank Adams, Judge, presiding.

Messrs. G. W. & J. T. Kretzinger, for the appellants.

Messrs. Smith, Helmer & Moulton, and Mr. H. K. Wheeler, for the appellees.

Mr. Justice Wilkin delivered the opinion of the Court:

This is an action of assumpsit, begun in the circuit court of Cook county, by appellants, against appellees. The declaration contained the common counts for goods sold and delivered, money lent, paid out and expended, had and received, interest due, work and materials furnished, and money found

due on settlement. There was filed with the declaration a statement of account between the parties, called by counsel a bill of particulars, in which the defendants were charged with items amounting to $257,461.85, and credited with $176,-307.26, leaving a balance due the plaintiffs of $81,154.59. The action was, in fact, for money claimed by plaintiffs to have been paid out, and for commissions, storage, insurance, interest and losses upon certain corn transactions, in which they acted as the agents of the defendants. Pleas of the general issue, non-joinder of defendants and set-off were filed, and issues joined thereon. Upon a trial by the court, a jury being waived, plaintiffs recovered, but on appeal to the Appellate Court for that district the judgment was reversed and the case remanded. Upon its re-instatement in the circuit court, plaintiffs obtained leave to amend their declaration, and filed another declaration precisely like the first, except that the *ad damnum* was increased. They also filed with this last declaration another account, in which the charges against plaintiffs were increased to $944,137.70, the credits remaining as in the former account, leaving a balance due plaintiffs of $767,830.44. The same pleas and replications stood to this declaration previously filed, and the case was again tried by the court without a jury. The judgment being for the defendants, plaintiffs appealed to the Appellate Court, where the judgment of the circuit court was affirmed, the former opinion being adopted by reference thereto. From that judgment of affirmance this appeal is prosecuted.

By reference to 40 Ill. App. 523, a statement of the facts can be found, and it will not be necessary to repeat them here. It will also there appear that the transactions out of which plaintiffs' claim is alleged to have arisen were held to be unlawful, as growing out of a contract or combination between the defendants, and to which the plaintiffs were parties, to unnaturally enhance the price of corn in the market. Counsel for appellant seem to understand that holding to apply

only to sales, and not to purchases or transactions growing out of them, and they insist, that whereas, their former declaration and account were for a balance due after giving the defendants credit for the proceeds of certain sales, the declaration and bill of particulars upon which the last trial was had was for the recovery of advances, etc., on account of purchases, "without recognizing the sale of the corn, or any part thereof, and without giving credit for the proceeds of its sales or any part thereof, treating the corn so purchased, in the possession of appellants, as commission men and agents for appellees." In this way it is attempted to place plaintiffs in the position of maintaining a lawful claim, and avoid whatever illegality there may have been in the transactions between the parties as to sales. This led to an unusual method of introducing the evidence, for while it was stipulated that either party might read from the transcript of the record certified to the Appellate Court from the former trial, "all or any part of the evidence offered by them, or either of them, at the former hearing and trial, * * * subject, however, to all objections that may be offered or urged against the admission thereof, said objections to have the same effect as if originally given by the witnesses being called upon the stand," still counsel for plaintiffs insisted upon reading only so much of their former testimony as they understood to relate to purchases, and objected to the reading of all other parts thereof. The court permitted them to elect what portions they would read, but overruled the objection as to the reading of other parts of it. The result was, that piece-meal, by one party or the other, the material portion of the evidence introduced on the former trial was re-offered on this. It is now insisted that the court below erred in allowing the defendants to introduce so much of that testimony as pertained to sales of corn. They contend that by the new declaration and bill of particulars the issues were changed. The issues were formed on the allegations of the declaration, and not upon the copy

of the account between the parties, but we are unable to see how the competency of the evidence objected to, in any way depended upon the items in that account. Of course, the plaintiffs were not required to offer proof of claims not made by them, but the defendants certainly had a right to disprove plaintiffs' claims if they could. The testimony objected to tended to show, if it did not prove, that the purchases and sales were alike a part of an unlawful attempt to force the corn market. The evidence read by plaintiffs and that offered by the defendants did not tend to prove independent transactions, but parts of a single scheme. We think the circuit court ruled properly in disallowing the objection.

Moreover, we are unable to find, either in the opinion of the Appellate Court or the evidence in this record, any warrant whatever for the assumption that the transactions between these parties were lawful so far as they related to purchases, but unlawful as to sales. In the opinion of the court by WATERMAN, J., after referring to the evidence both as to what was to be done in the way of purchases and sales, citing, with other testimony, that of Mr. Foss, one of the plaintiffs, he says: "What, then, was this transaction, and if not an attempt to corner the market, was it in any way an unlawful undertaking? It was clearly a combination to enhance the price of corn. The parties who entered into it had on hand, or had purchased, large quantities of corn. It is not pretended that they had any use or need for more. Nevertheless, they entered into an agreement to purchase cash corn and May options, as the plaintiff Foss testifies, because by buying up the cash corn the market would advance. Other parties were also large holders of corn, and they were brought into the arrangement. A combination was made not only to purchase corn, but to prevent the free selling thereof. All the immense amount of corn owned by these parties was put into the hands of the plaintiffs. They were to control all, and thus, by united holding, united purchases and no sales, save

such as should be for the benefit and the interest of all, the market was to be controlled, the price of a staple commodity, —one of the prime necessities of life,—enhanced, and it was expected great gains would be made by the parties to the combination, while he who had corn to buy for food would be compelled to pay, not the price of a free market, but the sum to which, by such combination, such united holding and withholding, the market might be forced." We are therefore not left merely to the presumption arising from the judgment of affirmance by the Appellate Court that it found the whole scheme to be unlawful, and that plaintiffs were parties to it, but it expressly so stated in its opinion. An attempt is made to maintain the position that there is no evidence whatever in the record to support this finding, but it has wholly failed. Not only does the testimony tend to do so, but, in our opinion, clearly sustains the conclusion reached as announced in the foregoing quotation.

The only question then remaining for us to pass upon is, did the trial court err in its rulings upon propositions of law. Plaintiffs' attorneys submitted twenty-three lengthy statements in writing, and asked the court to hold them propositions of law applicable to the case, all of which were refused. Many of them contained no distinct legal propositions whatever, but it is only necessary for us to say, that if the proposition held at the request of the defendants correctly stated the law of the case, each of those asked by the plaintiffs was necessarily erroneous, and properly denied. The one held is in the following language:

"The court holds, as a proposition of law applicable to this case, that if the corn known as XX corn was purchased and sold by Foss, Strong & Co., and advances were made thereon, and storage and insurance were also paid and advanced by them thereon, in pursuance of and in the execution of an agreement, understanding or combining by the defendants to advance and enhance the price of corn above what the market

price thereof would have been if left free from manipulation, by buying up the cash corn coming into the Chicago market and by keeping back from said Chicago market corn which would otherwise have been brought to said market for sale, and Foss, Strong & Co. were parties to or assented to and aided in such agreement, and acted in the premises as the brokers or commission men for said defendants, in pursuance of and in execution of such scheme to thus enhance the price of corn, then there can be no recovery by the plaintiffs for losses they may have sustained in the purchase and sale of said corn, or for advances made or expenses incurred, or for commission for purchase and sale thereof."

This court is fully committed to the rule of law here announced. (*Craft* v. *McConoughy*, 79 Ill. 346; *Samuels et al.* v. *Oliver et al.* 130 id. 73.) Our statute makes it a penal offense to "corner the market, or attempt to do so," in relation to any grain or other commodity, and declares all contracts made for that purpose void. (Rev. Stat. sec. 130, chap. 38.) We are unable to distinguish the combination between these parties, as found by the Appellate Court, from an *attempt* to corner the Chicago market in relation to corn. Practically it is that, and nothing else. But whether it is or not, it was an attempt to advance the price of corn beyond the natural market by a combination between the parties, and that the law condemns, as against public right, and void, and forbids the courts to lend their aid to those engaged therein. "All compacts between merchants, speculators or any class of men to elevate or depress the market are injurious to the public interest, and in restraint of trade. When such a purpose is apparent in a contract, it strikes the agreement with nullity. Such a combination of dealers is nothing less than a conspiracy against trade, entered into for selfish purposes, and tending to make the poor poorer and the rich richer. Whether the design is to bring the price of any commodity to a point below its value in a fair and open market, or to raise it above

its true worth, the illegality of the combination is the same. Such design will not be furthered by the courts, though there may be circumstances under which the object of such a contract does not sufficiently appear to expose the illegality. If .the true character is known the contract will be held void." (9 Am. & Eng. Ency. of Law, 895, and cases cited.) The case of *Arnot* v. *Coal Co.* 68 N. Y. 558, cited in the note, and the authorities referred to in the opinion in that case, fully sustain the text. It makes no difference that the agreement is only in partial restraint of trade. If the public is injuriously affected (and that is necessarily so when the combination tends to increase the price of a commodity of general use) it is illegal.

On the facts of this case as they must be accepted by us, the judgment of the circuit court, and its affirmance by the Appellate Court, are clearly right. The judgment of the latter court is affirmed.          *Judgment affirmed.*