# MARSHALL & BRUCE CO. v. CITY OF NASHVILLE.

## (*Nashville.*　December .Term, 1902.)

1. **MUNICIPAL CORPORATIONS.** Ordinance requiring union label on printing invalid. Case in judgment.

The charter of Nashville requires that all goods and supplies furnished the city amounting to over fifty dollars must be let out at competitive biddings to the lowest responsible bidder. An ordinance of the city provides that all city printing shall bear the union label. The city being in need of certain stationery over the value of fifty dollars, solicited competitive bids therefor, and inserted in the advertisement that all work must bear the union label. Complainant being the lowest bidder was awarded the contract and thereunder manufactured all of the articles covered thereby, according to the specifications contained in the contract, omitting only the union label. For the sole and only reason that the goods did not bear the union label prescribed by the ordinance, the city notified complainant that it would .not receive or pay for same, and relet the contract, at an advance of 38½ per cent., to another person. Complainant filed its bill to collect the contract price of said goods, and to have the ordinance in question declared unreasonable, null and void. The city, defendant, insists upon the validity of the ordinance and further denies complainant's right to a recovery because it knew of the ordinance and its bid was made in response to an advertisement specifying that the work must bear the union label, and therefore it must be held to have agreed to comply with the ordinance and the specifications of said advertisement, although complainant made no express stipulation with respect to attaching the union label.

HELD: First. *The ordinance is void, because*:

1st. It is in plain conflict with the spirit, purpose and letter of the charter of defendant.

2d. It is class legislation, arbitrarily discriminative in its character, and contrary to public policy in that it stifles competition and fosters monopoly. Holden *v. City of Alton*

(Ill.), 53 N. E., 556; City of Atlanta v. Stein (Ga.), 36 S. E., 932; 51 L. R. A., 335; Adams v. Brenan, 177 Ill., 194; Fisk v. People (Ill.), 58 N. E., 985; State v. Loomis, 105 Mo., 307; In re Jacobs, 98 N. Y., 98; People v. Gillson, 109 N. Y., 389; Slaughter Cases, 111 U. S., 746; Fishburn v. City of Chicago, 171 Ill., 338.

3d.   It violates the fourteenth (sec. 1) amendment to the constitution of the United States in depriving those not using the label of their "liberty," and the equal protection of the law, in pursuing their avocation of printing. Citizens, etc., Assn. v. Topeka, 20 Wall., 655; State v. Loomis, 105 Mo., 307; Yick Wo v. Hopkins, 118 U. S., 356.

4th.   It violates the State constitution (art. 1, sec. 17), which guarantees that for an "injury done" a person, he "shall have a remedy by due process of law."

5th.   That the mandatory provision of the charter, being in conflict with the ordinance, prevails and renders the ordinance void. Worthington v. Boston, 152 U. S., 695; Zottman v. San Francisco, 81 Am. Dec., 96; Whitney v. Village of Hudson, 69 Mich., 189; McDonald v. N. Y., 23 Am. Rep., 144; City of Lancaster v. Miller, 58 Ohio State, 558; Addis v. City of Pittsburg, 85 Pa., 379.

Second.   That complainant was authorized to ignore the provisions of the advertisement made in pursuance of said void ordinance and might lawfully refuse to comply therewith in furnishing the goods.

Third.   That said ordinance being illegal and void, it must be presumed, in the absence of proof, that all bidders knew that the provision in the advertisement was invalid and that they might lawfully ignore it, and that no restriction resulted therefrom in the bidding, and, therefore, the contract awarded to complainant, the lowest bidder, was binding on the city.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.  H. H. COOK, Chancellor.

Marshall & Bruce Co. v. City of Nashville.

VERTREES & VERTREES and JOHN ALLISON, for Marshall & Bruce Co.

K. T. McCONNICO and HILL McALISTER, for City of Nashville.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a bill against the mayor and city council of Nashville to recover eighty-three dollars and five cents and interest for stationery furnished and printed for the city.  The city concedes that the account is correct as to items and amounts, but declines to receive the goods and pay the bill therefor on the ground that the stationery does not bear the union label of the Nashville Allied Trades Council, or the label enacted by the International Typographical Union.

It appears that on December 11, 1897, the city council of Nashville passed the following ordinance:

Section 1. Be it enacted that all city printing shall bear the union label of the Nashville Allied Trades Council or the label enacted by the International Typographical Union.

"Sec. 2.  That this ordinance shall take effect from and after its passage, the welfare of the city requiring it."

It appears further that in February, 1901, the city, being in need of blank books and stationery over the value of $50, solicited competitive bids therefor, specifying what was desired, and complainant, being the

lowest bidder, was awarded the contract to furnish
the goods, and, under its bid and contract, manu-
factured the articles specified, according to specifi-
cations, and delivered some of the letter heads em-
braced in the order in March, 1901.

After the manufacture of all the items specified, and
the advance delivery of the letter heads mentioned,
the city notified complainant that it would refuse to
receive the goods upon the sole and only ground that
they did not bear the union label prescribed by the
ordinance, and refused to pay for the goods for the
same reason, and thereupon relet the work to the
Brandon Printing Company at an advance price of
thirty-eight and one half per cent. The bill is filed to
recover the amount of complainant's bill, and to have
the ordinance in question declared unreasonable, null,
and void.

The city insists upon the validity of the ordinance,
and that complainants knew of its existence when they
made their bid, and agreed to abide by it in the event
the contract was awarded to them, and upon both
grounds deny any right of recovery.

The chancellor heard the case on proof, and held
the ordinance null and void because in conflict with
the provisions of the charter of the city, and gave com-
plainant judgment for the amount of the bill and
costs.

The city appealed, and in the court of chancery ap-
peals assigned two errors: First, that the chancel-

lor erred in holding the ordinance void, and that it was not in the power of the city to pass the same; second, that, even if the ordinance be held void, the complainant nevertheless agreed to place the union label upon the stationery, and was bound by its agreement, and, unless complied with, it could not recover.

The charter of the city requires that all goods and supplies furnished the city, amounting to over fifty dollars, must be let out at competitive biddings to the lowest responsible bidder.

We are of opinion that the ordinance in question is clearly in conflict with the spirit, purpose, and letter of the charter, and is invalid and void.

It is, moreover, class legislation, contrary to public policy and to the constitution of the State, because plainly discriminative in its character. All the authorities to which we have access so hold in regard to similar ordinances and statutes, and we have been able to find none to the contrary. We cite the following from among many others: *Davenport* v. *Walker* (Sup.) 68 N. Y., 161; *Holden* v. *City of Alton* (Ill.), 53 N. E., 556; *City of Atlanta* v. *Stein* (Ga.) 36 S. E., 932 (51 L. R. A., 335); *Adams* v. *Brenan,* 177 Ill., 194 (52 N. E., 314, 42 L. R. A., 718, 69 Am. St., Rep., 222); *Fiske* v. *People* (Ill.), 58 N. E., 985 (52 L. R. A. 291); *State* v. *Loomis,* 115 Mo., 307 (22 S. W., 350, 21 L. R. A., 789); In re Jacobs, 98 N. Y., 98 (50 Am. Rep., 636); *People* v.

*Gillson,* 109 N. Y., 389 (17 N. E., 343, 4 Am. St., Rep., 465).

We give a short synopsis of several cases, to illustrate the holdings:

*Holden* v. *City of Alton* (Ill., April 17, 1899), 53 N. E., 556: The charter of the city of Alton provided that all printing and contracts for stationery should be let to the "lowest bidder" unless the amount of the contract price was under ten dollars. Charles Holden proposed at a competitive bidding, under seal, to print certain bonds for the city for eighteen dollars and twenty-five cents. The Sentinel-Democrat Printing Company bid twenty-two dollars and eighty-five cents for the same work. An ordinance was pending before the council, but had not become a law, to the effect that no city printing should be let to any one who could not furnish the union label. Mr. Holden could not, but the Sentinel-Democrat Printing Company could. The letting of the contract was delayed until the ordinance could be passed. This being done, the contract was let to the Sentinel-Democrat Printing Company, and the bid of Holden refused, solely and alone on the ground that he could not show the union label. Holden was a stationer of good standing, entirely responsible, and a taxpayer of the city. He filed a bill to enjoin the Sentinel-Democrat Printing Company from carrying out the contract, and the city from paying him therefor. Nothing had been

done in that direction when the bill was filed, but pending the final decision the city paid him anyway.

The court held that the fact that Holden was a bidder did not impair his right to bring the bill as a taxpayer. The court further said that, even if the ordinance had been approved before the bidding, the case would not have been altered; that the statute or charter required the contract to be let to the lowest bidder; and that this "implied equal opportunity and freedom in all who might choose to bid." The court said, that while in many cases there might be ground for the exercise of discretion, here there was no attempt to exercise any discretion as to the qualification or facilities of bidders, and that a refusal upon the ground upon which Holden was refused was "merely the imposition of a greater burden on the taxpayers, through an attempted abuse of power." As the money was paid after the bill had been filed, restitution to the city was directed.

*City of Atlanta* v. *Stein* (Ga., Aug. 9, 1900), 36 S. E., 932: The charter of Atlanta does not require the public printing to be let to the lowest responsible bidder, but leaves to the municipal authorities a wide discretion.

An ordinance was passed by the city requiring all printing used by the city to bear the union label, and directing all advertisements soliciting bids to so state. Printing was advertised for, it being stated that no bids could be accepted for printing which

could not bear the union label.     There were four
union and fifteen nonunion printing establishments
in Atlanta at that time.     The nonunion men were not
allowed to bid, and evidence was introduced tending
to show that they could have bid less than the lowest
union bid.

The work was awarded to the Pease Printing Com-
pany, a union establishment.     Thereupon, Mr. Stein
filed a bill, as a citizen and taxpayer, to enjoin the
execution of this contract.     The injunction was grant-
ed upon the ground that the ordinance was void be-
cause it tended to defeat competition and encourage
monopoly.     The court said that it was "not within the
power of municipal authorities to enact legislation of
this kind."     This ordinance cut off the power to fully
and freely exercise the discretion which the public
good required to be exercised, and it was therefore
void.     The injunction was granted.

*Adams* v. *Brenan,* 177 Ill., 194 (52 N. E., 314; 42
L. R. A., 718, 69 Am. St. Rep., 222):  The board of
education in Chicago entered into an agreement with
a workingman's union, known as the "Building Trades
Council," to the effect that the board would insert in
all contracts for work on school buildings a provision
that union men only should be employed by contrac-
tors to work on such buildings.

A schoolhouse needing repair, the board advertised
for bids, inserting in the advertisement a clause to
the effect that none but union labor should be em-

Marshall & Bruce Co. v. City of Nashville.

ployed.  One Knisely put in two bids.  One was for one thousand, nine hundred dollars, with the right to use either union or nonunion labor, and the other was two thousand and ninety dollars, and use union labor only.

The board accepted the higher or "union" bid.  J. L. Adams, a taxpayer, thereupon filed a bill against Knisely and the board to enjoin the execution of the contract.  The injunction was granted, although the work had been begun under the contract.

The court held that, even if the provision had been inserted pursuant to an act of the legislature, it would be void; that such an act would be unconstitutional, because it would be an infringement upon the constitutional right of the citizen, and tended to create a monopoly and to restrict competition in bidding for work.

The contract was in effect an expenditure of public money for the benefit of a private organization or labor union.

Recently this identical question arose in that State. An ordinance was passed by Chicago to the effect that every bidder upon public work should agree to use only union labor, and that the contract made in pursuance of such bids should so provide.

The ordinance was declared to be void as discriminating between different classes of citizens, and as restricting competition and increasing the cost of public work.  *Fiske* v. *People* (Ill.) 58 N. E., 985 (52

L. R. A., 291). A statute which made it a misdemeanor for any person to keep any employee from joining a labor union under a threat to discharge him was held to be void because it deprived such persons of the freedom of entering into and terminating contracts. *Gillespie* v. *People* (Ill.), 58 N. E., 1007 (80 Am. St. Rep., 176, 52 L. R. A., 283).

This ordinance in question violates section one of the fourteenth amendment to the constitution of the United States, which declares that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

And it violates the constitution of the State of Tennessee, art. 1, sec. 17.

This ordinance limits the right of the board of public works to contract for the public printing for such of the city's offices as use printed matter with the union label impressed on it. It limits competition, and was so intended, and of necessity increases the price for all such work, and hence is against public policy.

In *Adams* v. *Brenan,* referred to above, the supreme court said: "There is no more reason or justification for such a contract as this than there would be for a provision that no one should be employed except mem-

bers of some particular party or church. In any such case it might be said that the board entertained a *bona fide* opinion that the members of some political party were more intelligent and better capable of performing the work, so that better results would be attained, or that the members of a church, on account of their higher standard of morality, would more faith· fully and conscientiously carry out the contract. The fact that the board may have been of the opinion that its action was for the benefit of the public can not afford a justification for limiting competition in bidders, and requiring them to abandon the right to contract with whomsoever they may choose for the performance of the work."

And in the same case the court further said: "It is plain that the rule adopted by the board and included in this contract is a discrimination between different classes of citizens, and of such a nature as to restrict competition and to increase the cost of work."

And in *Holden* v. *City of Alton,* in a more recent decision involving the use of the so-called union label, the supreme court of Illinois said: "The council cast upon the taxpayers an increased burden . . . solely because it had entered into a combination with a certain class of persons doing printing to restrict the privilege of bidding to such class, instead of leaving it open to all citizens upon like conditions. Such a combination or agreement is in violation of common

right, tends to create a monopoly, and can not be tolerated."

This ordinance deprives those not using the union label of the right of pursuing their business avocation, to the extent that their bids for public printing will not be accepted.

In Appeal of Durach, 62 Pa., 495, the supreme court of Pennsylvania, in referring to such legislation, used the following language: "Legislation either to benefit or burden particular classes, under the idea that it is for the good of the State at large, infringes upon the natural and guaranteed right of 'acquiring, possessing and protecting property,' subject only to fair and equal contributions to the just and necessary expenses of a government, in the exercise of its proper and legitimate functions. A government, which assumes the office of controlling and directing the lawful industry of the citizens into the channels which it may choose to deem best, assumes what does not legitimately belong to it."

In the case of *Citizens' Savings & Loan Association* v. *City of Topeka*, 20 Wall., 655 (22 L. Ed., 455), the court said: "To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals, to aid private fortunes, is none the less a robbery because it is done under the form of law, and is called 'taxation.' This is not legislation. It is a decree under legislative form."

Marshall & Bruce Co. v. City of Nashville.

In *State* v. *Loomis,* 115 Mo., 307 (22 S. W., 350, 21 L. R. A., 789), Chief Justice Black said: "Liberty, as we have seen, includes the right to contract as others may, and to take that right away from the class of persons following lawful pursuits is simply depriving such persons of a time-honored right which the constitution undertakes to secure to every citizen."

In the case of *Yick Wo* v. *Hopkins,* reported in 118 U. S., 356 (6 Supt. Ct., 1064; 30 L. Ed., 220), the supreme court holds that the ordinance of a city which makes arbitrary and unjust discrimination between persons is a violation of the rights and privileges guaranteed in the fourteenth amendment to the constitution of the United States.

The answer is made that the nonunion citizen is not deprived of the right to contract for this work by this ordinance, except by his own act in refusing to join the union. So any man could become a Democrat, a Presbyterian, or a Catholic. And should a law limit public work to any one of these classes, the individual could bring himself within the privileged class by joining it. But he is not compelled to do this.

*In re* Jacobs, 98 N. Y., 98 (50 Am. Rep., 636), the court of appeals said: "Liberty, in its broad sense, as understood in this country, is not freedom from actual servitude, imprisonment, or restraint, but the right of one to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or vocation. All laws, therefore, which

impair or trammel these rights, which limit one in his
choice of a trade or profession, or confine him to work
or live in a specified locality, or exclude him from his
own house, or restrain his otherwise lawful move-
ments, except such as may be passed in the exercise by
the legislature of the police power, are infringements
upon his fundamental rights of liberty, which are
under constitutional protection."

In *People* v. *Gillson*, 109 N. Y., 389 (17 N. E., 343,
4 Am. St., Rep., 465), it was said: "It is quite clear
that some one or all of these fundamental and valuable
rights are invaded, weakened, limited, or destroyed by
the legislation under consideration. It is evidently
of that kind which has been so frequent of late,—a
kind which is meant to protect some class in the com-
munity against fair, free, and full competition of some
other class; the members of the former class thinking
it impossible to hold against such competition, and
therefore flying to the legislature to secure some en-
actment which shall operate favorably to them, or un-
favorably to their competitors in the commercial, agri-
cultural, manufacturing, or producing fields."

In *Butcher's Union Slaughter House & Live Stock
Landing Co.* v. *Crescent City Live Stock Landing &
Slaughter House Co.*, 111 U. S., 746 (4 Sup. Ct., 652;
28 L. Ed., 585), the court said: "A monopoly is de-
fined to be an institution or allowance from the sover-
eign power of the State, by grant, commission or other-
wise, to any person or corporation, for the sole buy-

ing, selling, making, working, or using of anything, whereby any person or persons, bodies politic or corporate, are sought to be restrained of any freedom or liberty they had before, or hindered in their lawful trade.   All grants of this kind are void at common law, because they destroy the freedom of trade, discourage labor and industry, restrain persons from getting an honest livelihood, and put it in the power of the grantees to enhance the price of commodities. They are void because they interfere with the liberty of the individual to pursue a lawful trade or employment."

In *Fishburn* v. *City of Chicago,* 171 Ill., 338 (49 N. E., 532; 39 L. R. A., 482; 63 Am. St. Rep., 236), the court said: "It is a well-settled general rule that all contracts in which the public are interested which will tend to prevent competion are void."

And in *City of Chicago* v. *Rumpff,* 45 Ill., 90 (92 Am. Dec., 196), the court said: "It is believed that the result of the authorities warrants the assertion that corporate franchises, whether municipal or private, are conferred in trust for the benefit of the entire body of corporators, and must, like all trusts, be exercised with prudence and discretion. Hence their by-laws must be reasonable; and such as are vexatious, unequal or oppressive or are manifestly injurious to the interest of the corporation, are void, and of the same character are all by-laws in restraint of trade, or which necessarily tend to create a monopoly."

And to the same effect is *People* v. *Chicago Gas Trust Co.*, 130 Ill., 268 (22 N. E., 798, 8 L. R. A., 497, 17 Am. St. Rep., 319) ; *Foss* v. *Cummings*, 149 Ill., 353 (36 N. E., 553).

In *City of Cairo* v. *Feuchter*, 159 Ill., 155 (42 N. E., 308), the court said: "A city ordinance which unjustly discriminates between persons coming within the same class, and imposes burdens on some from which others are by its terms exempt, is void."

The ordinance under discussion does not undertake to fix a standard of quality, but it singles out a certain class, and requires the board of public works to purchase from that class, and from no other. This is an arbitrary descrimination, and the city has no authority or power to pass such an ordinance. *City of Chicago* v. *Rumpff*, 45 Ill., 90 (92 Am. Dec., 196) ; *Tugman* v. *City of Chicago*, 78 Ill., 405 ; *City of Hannibal* v. *Missouri & K. Tel. Co.*, 31 Mo. App., 23, 32, 33; *Allgeyer* v. *Louisiana*, 165 U. S., 578, 589 (17 Sup. Ct., 427, 41 L. Ed., 832) ; *Yick Wo* v. *Hopkins*, 118 U. S., 370, 371 (6 Sup. Ct., 1064, 30 L. Ed., 220) ; 1 Dill. Mun. Corp., (4th Ed.) sec. 322; *Kansas City* v. *Sutton*, 52 Mo. App., 398, 400; *River Rendering Co.* v. *Behr*, 77 Mo., 91 (46 Am. Rep. 6) ; *City of St. Louis* v. *Russell*, 116 Mo., 248, 258 (22 S. W., 470, 20 L. R. A., 721) ; *Eden* v. *People*, 161 Ill., 296 (43 N. E., 1108, 32 L. R. A., 659, 52 Am. St. Rep., 365).

The various reasons assigned in these cases are that

such ordinances tend to create a monopoly; that they are class legislation, discriminative in their character; that they prevent parties from an equal enjoyment of their property and business, and deprive persons of their property rights, in violation of the constitution, by restricting trade and the free use of property on equal terms with others.

Municipal corporations have power to pass ordinances, but, in order to be enforceable, they must be legal, reasonable, constitutional, and not contrary to valid charter provisions; and, if they do not comply with these requirements, they will be set aside by the courts as invalid and illegal. The basic idea underlying all these decisions is that municipal powers are delegated to, and held in trust by, the corporation, to be exercised for the benefit of all the inhabitants of the municipality, equally and impartially. 1 Dill. Mun. Corp., 3556; *People* v. *Armstrong* (Mich.), 16 Am. St. Rep., 584, note, s. c. 41 N. W., 275, 2 L. R. A., 721; *Anderson* v. *City of Wellington* (Kan.), 19 Pac., 719 (2 L. R. A., 110, 10 Am. St. Rep., 175); *Ward v. Mayor,* 35 Am. Rep., 702 note; *Robinson* v. *City of Franklin,* 34 Am. Dec., 633 note; *City of Tarkio* v. *Cook* (Mo.), 25 S. W., 202, 41 Am. St. Rep., 678; *Champter* v. *City of Greencastle* (Ind.), 35 N. E., 14, 24 L. R. A., 768, 46 Am. St. Rep., 390; *Long v. Taxing Dist.,* 7 Lea, 137 (40 Am. Rep., 55), and cases cited; *Smith* v. *City of Knoxville,* 3 Head,

245; *Maxwell* v. *Jonesboro,* 11 Heisk., 257; *Trigally* v. *City of Memphis,* 6 Cold., 382.

The provisions of the charter are mandatory, and must be obeyed by the city and its agents; and, if in conflict with an ordinance, the charter must prevail. *Worthington* v. *City of Boston,* 152 U. S., 695 (14 Sup. Ct., 737; 38 L. Ed., 603); *Zottman* v. *City and County of San Francisco,* 81 Am. Dec., 96; *Whitney* v. *Village of Hudson,* 69 Mich., 189 (37 N. W., 184); *McDonald* v. *City of New York,* 23 Am. Rep., 144; *City of Lancaster* v. *Miller,* 58 Ohio St., 558 (51 N. E., 52); *Addis* v. *City of Pittsburg,* 85 Pa., 379.

It is insisted, however, for the city, that, if the ordinance is invalid (and its invalidity is now virtually conceded), still the complainants contracted to furnish the material with the label upon it, and, not having complied with this contract, they can not recover upon it.

Complainants insist that the requirement of the label was a nullity, and, as a matter of fact, did not constitute a part of their bid as it was made and accepted, and the contract having been awarded to them, and the material having been furnished, in all respects complying with the specifications, except the label, they are entitled to disregard the void and illegal requirement, and recover for the goods. The advertisement of the city for the work contained notice that "all work, before acceptance, must have the union label."

Marshall & Bruce Co. v. City of Nashville.

In making their bid, the complainants specified the goods to be furnished, item by item, and offered to furnish such goods, but made no express stipulation to attach the union label; and they insist that the latter stipulation is not part of the specification, and was not assented to and made a part of the contract.

The court is of opinion that the provision in the contract and advertisement that the goods would bear the union label was invalid, illegal and void, and that bidders were not bound by the provision, but might ignore the same in making their bids, and refuse to comply with the same in executing their contract. The majority of the court is further of opinion that the insertion of this provision in the contract and advertisement can not, in the absence of proof, be presumed to have interfered with the competitive bidding, since all bidders must be assumed to have known that the provision was illegal and could not be enforced.

This being so, the contract and bidding must be treated as though no such condition was attached to them, and the complainants having made the lowest bid, and having been awarded the contract, and having executed the same in all respects according to the specifications, except the requirement as to the label, the city is legally obligated and bound to accept and pay for the goods, and complainants are entitled to recover the stipulated price; and the decree

of the court of chancery appeals is reversed, and the decree of the chancellor is affirmed, and the city will pay all the costs of the same.

MR. JUSTICE WILKES delivered the following dissenting opinion:

I do not concur in the conclusion reached by the court. I am of opinion the ordinance in question is void for the reasons stated in the opinion of the majority, but I think the legal and logical consequence is that the letting of the contract under it was illegal, and complainants are not entitled to recover upon such illegal contract of letting. *City of Memphis* v. *Memphis Gayoso Gas Co.,* 9 Heisk., 532.

The provision of the charter relating to the letting of contracts is mandatory and controlling, and the bidding, not having, in my opinion, been open to free and unrestricted competition, was illegal, and gave no rights and imposed no liability, even though fully performed by either party. *City and County of San Francisco* v. *Broderick,* 125 Cal., 188 (57 Pac., 887) ; *McBrian* v. *City of Grand Rapids,* 56 Mich., 95 (22 N. W., 206) ; *McDonald* v. *City of New York,* 23 Am. Rep., 144; *Zottman* v. *City and County of San Francisco,* 81 Am. Dec., 96.

In *McDonald* v. *City of New York,* 23 Am. Rep., 144, the court held (Judge Folger delivering the opinion) that, when the charter of a city prohibited it from incurring liability except in a specified manner, the city was not liable where the method pre-

scribed in the charter was not followed. This is the rule laid down by the supreme court of the United States in *Bank* v. *Dandridge,* 12 Wheat., 70 (6 L. Ed., 552).

In *Zottman* v. *City and County of San Francisco,* 81 Am. Dec., 96, it was held (Chief Justice Field delivering the opinion of the court) that the charter of a municipality is the source of its power, and, when the mode in which its power on any given subject can be exercised is prescribed by its charter, the mode must be followed, or the municipality will not be bound. It would seem to follow, as an inevitable conclusion, that a contract made in violation of a charter provision can not be ground for any liability against the corporation, and such contract can not be ratified by any subsequent act of the municipal authorities. See, also, *City of Memphis* v. *Memphis Gayoso Gas Co.,* 9 Heisk., 532. Chief Justice Marshall, in *Head* v. *Insurance Co.,* 2 Cranch, 127 (2 L. Ed., 229), said: "The act of incorporation is to them an enabling act. It gives them all the power they possess. It enables them to contract, and, when it prescribes to them a mode of contracting, they must observe the mode, as the instrument no more creates a contract than if the body had never been incorporated." See, also, *McCracken* v. *City of San Francisco,* 16 Cal., 591; *Iowa Railroad Land Co.* v. *Sac Co.,* 39 Iowa, 149; *Carron* v. *Martin,* 69 Am. Dec., 584, note; *Ferguson* v. *Halsell,* 47 Tex., 423.

The requirement inserted in the advertisement for sealed bids, containing the provision that the work should bear the union label, was calculated to deter free and competitive bidding. Even though we assume that all bidders knew the provision to be illegal and void (a violent presumption), still it is apparent that for such a small bill no bidder would care to incur the trouble and expense of litigation likely to follow a defiance of the provision.

It is safe to presume that complainant would not have done so, except to test the question involved, and the record indicates that such was the purpose (and not an illegal one) of the complainant in becoming a bidder and making the contract.

The doctrine is tersely stated in 20 Am. & Eng. Enc. Law (2d Ed.) p., 1166, as follows: "A fair competition among the bidders is the prime object of such provisions, and anything which tends to impair this is illegal. So is a requirement that each bidder shall agree not to employ any one not belonging to organizations approved by certain building trade councils." *Elliott* v. *City of Pittsburg,* 6 Pa. Dist. R., 455; *Van Reipen* v. *Jersey City,* 58 N. J. Law, 262 (33 Atl., 740); *McCloud* v. *City of Columbus,* 54 Ohio St., 439 (44 N. E., 95), cited in 20 Am. & Eng. Enc. Law (2d Ed.), p. 1166.

I concur, therefore, with the majority in holding the ordinance invalid, but I am of opinion the letting was illegal, and no right exists in either party to enforce it. Justice McAlister joins me in this dissent.