(112 App. Div. 604)

PEOPLE ex rel. JOHN SINGLE PAPER CO., Limited, v. EDGCOMB, Sup'r, et al.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

1. CONTRACTS—LEGALITY—PUBLIC POLICY—PREVENTION OF COMPETITION FOR PUBLIC WORK.

A requirement by a county board of supervisors that bidders for the publication of the journal of the board shall use the printers' union label is against the public policy and unlawful.

2. COUNTIES—CONTRACTS—BIDS—CONTRACTOR'S BOND—SUFFICIENCY.

Where the advertisement of a board of county supervisors for bids for a contract for county printing required bidders to use the printers' union label, the absence from the bond tendered by the accepted bidder of any provision requiring the use of the union label did not justify the supervisors in refusing to approve the bond.

3. ESTOPPEL—ACQUIESCENCE IN ILLEGAL REQUIREMENT.

Where the advertisement of a county board of supervisors for bids for a contract for county printing contained a requirement that the label of the printers' union should be used on the work, the act of the bidder in submitting a bid upon the specifications containing the illegal clause did not estop it from afterward asserting its illegality.

4. MANDAMUS—SCOPE OF REMEDY—APPROVAL OF BOND.

Where a county board of supervisors wrongfully refused to approve the bond of a successful bidder for county printing, mandamus was the proper remedy to require them to approve the bond.

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Special Term, Onondaga County.

Mandamus proceedings by the people of the state of New York, on the relation of the John Single Paper Company, Limited, against

Ernest I. Edgcomb, as chairman of the board of supervisors of the county of Onondaga, and another. From an order denying the writ, relator appeals. Reversed.

The following is the opinion of ANDREWS, J., at Special Term:

In the fall of 1905, pursuant to a resolution of the board of supervisors of the county of Onondaga, advertisements were published for proposals for printing the journal of its proceedings and the court calendars. Contained in the advertisements were specifications as to the manner in which the work should be done, and requiring a bond in the sum of $1,000 for its faithful performance. The further provision was also inserted "Allied Printing Trades Council label required to be used." In pursuance of such advertisement, on the 5th day of December the relator submitted a bid in writing to the board, by which it agreed to publish the journal of proceedings as per specifications at $2.79 a page, and further agreed to furnish the required bond. This bid was the lowest one received, and by subsequent resolution the board decided to let the contract to the relator, according to the specifications, upon the filing of the proper bond. On the 11th day of December the relator did file a bond conditioned for the faithful performance of its work, as required by the specifications, "except the portion of said resolution purporting to require the use of the Allied Printing Trades Council label." This bond was disapproved, and the board passed a resolution that the contract in question be awarded to the relator "upon its filing with the clerk of this board a bond conditioned for the faithful performance of said work, and deemed by the chairman and clerk to be in conformity with the specifications prescribed by this board according to advertisement, such bond to be in such form and with such conditions as shall be prescribed by them, and to be filed within five days, and approved by the chairman and clerk; but, if such bond is not filed and approved as above, then the chairman and clerk are hereby authorized and empowered to enter into contract for the performance of said work with such person or persons and upon such terms as they shall deem for the best interests of the county." The board then adjourned. Subsequently the relator presented to the chairman and clerk a bond similar to that filed with the board. It was also disapproved. Thereupon the relator began this proceeding to obtain a writ of mandamus requiring the respondents, as chairman and clerk of the board of supervisors, to approve such bond.

It is probably the law that the requirement contained in the specifications that the Allied Printing Trades Council label shall be used is illegal. Davenport v. Walker, 57 App. Div. 221, 68 N. Y. Supp. 161; Marshall & Bruce Co. v. Nashville, 109 Tenn. 495, 71 S. W. 815. While I have found no statute which requires a board of supervisors to let a contract to the lowest bidder, or to invite general competition, yet it is probably also true that where a contract is advertised for it would be a waste of public funds unreasonably to let it except for the lowest price offered, or to narrow competition by unreasonable, unnecessary, or unlawful requirements. If this be so, such a contract as was proposed would be unlawful, and any taxpayer has an appropriate remedy. Yet it does not follow that the petitioner is entitled to a peremptory writ of mandamus. It says that the requirement with regard to the Trades Council label is illegal. Conceded. It says also that this requirement results in higher prices than would otherwise obtain. Yet it enters into a competition, one of the conditions of which is that the label in question shall be used, without so far as appears notifying either the board or its competitors that it did not intend to be bound by that condition. The result can hardly fail to be that its competitors, if they supposed they were bound by the same condition, would increase their prices. The petitioner might also increase the price which it would otherwise offer to a somewhat less extent, and yet be sure of success. There would be no fair competition based upon the same requirement, and the public would inevitably be wronged. It may be said that every man is presumed to know the law, and that therefore the competitors of the petitioner stood upon an equal footing with itself. This purely technical maxim, however, which is simply a rule of convenience, and does not represent the fact, should never be invoked where the interests

of the public are concerned in a purely business proposition. As a matter of discretion, therefore, the writ should not be granted in this case.

As a matter of law as well the petitioner must fail. Assuming, as I do, that the requirement in question was illegal, the petitioner should not be heard to question it. It at least has offered to do the work advertised for in the manner and subject to the conditions of the specifications. It has voluntarily entered into this agreement. How can it now be heard to say that it will accept the conditions favorable to it and reject the one that is unfavorable. It at least is estopped from raising such a question. In so far as Marshall & Bruce Co. v. Nashville may be claimed to hold otherwise, I do not follow it.

The question as to the authority of the board to delegate to its officers the powers conferred by its resolution has not been raised by either party, and it is unnecessary to examine it here.

The application for a writ of mandamus is denied, with costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Frank Hopkins, for appellant.
William L. Barnum, for respondents.

SPRING, J. The defendants are, respectively, the chairman and clerk of the board of supervisors of the county of Onondaga. The board at its session in November, 1905, advertised for sealed bids for the publication of the journal of the board for that year. The specifications contained the statement, "Allied Printing Trades Council label required to be used." The relator submitted a bid, which was the lowest, and was formally accepted by the board. The specifications required the successful bidder to give a proper bond, to be approved by the board. On the 15th day of December, the relator, in attempted compliance with this requirement, presented to the board a bond, which excepted from the obligations undertaken by the obligor the use of the Allied Printing Trades Council label, and was rejected by the board solely because of that omission. On the 20th day of December, the day of its final adjournment, the board passed the following resolution:

"That the contract for printing the journal of proceedings for the year 1905 be awarded to the John Single Paper Company upon its filing with the clerk of this board a bond conditioned for the faithful performance of said work, and deemed by the chairman and clerk to be in conformity with the specifications prescribed by this board according to advertisement, such bond to be in such form and with such conditions as shall be prescribed by them, and to be filed within five days, and approved by the chairman and clerk."

And further empowering the chairman and clerk to enter into a contract for such work "if the bond is not filed and approved as above." On the 23d the relator presented another bond to the respondents, in the main conforming to the one previously rejected, with a copy of the specifications attached, except that the clause "Allied Printing Trades Council label required to be used" was stricken out. The bond was disapproved, on the ground that it was identical with the one rejected, and because it eliminated the clause mentioned. Thereupon this proceeding was commenced to compel the respondents to accept said bond.

The Allied Printing Trades Council label can only be used by printing concerns which employ members of Typographical Union No. 55, and not one-half of the printers in Onondaga county belong to this union. The requirement that the label mentioned must be used when its use limits the bidders to members of the particular union is against public policy and is unlawful. Davenport v. Walker, 57 App. Div. 221, 68 N. Y. Supp. 161; City of Atlanta v. Stein, 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335; Inge v. Board of Pub. Works of Mobile, 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20; State ex rel. Mitchell Furn. Co. v. Toole, 26 Mont. 22, 66 Pac. 496, 55 L. R. A. 644, 91 Am. St. Rep. 386; Paterson Chronicle Co. v. Paterson, 66 N. J. Law, 129, 48 Atl. 589; Marshall & Bruce Co. v. Nashville, 109 Tenn. 495, 71 S. W. 815; Adams v. Brenan (Ill.) 52 N. E. 314, 42 L. R. A. 718, 69 Am. St. Rep. 222; Holden v. City of Alton, 179 Ill. 318, 53 N. E. 556; Fiske v. People, 188 Ill. 206, 58 N. E. 985, 52 L. R. A. 291. A provision of this kind tends to create a monopoly in that it restricts the competition to a special class of printers. The board, with just as much propriety, so far as its legal right is concerned, might have permitted only Baptist or Unitarian printers to enter the bidding list. The policy of the law is to prevent any discrimination of this kind by publc officials, and the courts, so far as our research extends, have unvaryingly condemned this attempted violation of our fundamental law. The enactments which in recent times have found their way upon our statute books intended to discriminate for or against any particular class of people, or to restrict the freedom of contract, have been repeatedly held to transgress the constitutional rights of the citizen. People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496; People ex rel. Tyroler v. Warden of Prison, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763; Schnaier v. Navarre Hotel & Importation Co., 182 N. Y. 83, 74 N. E. 561, 70 L. R. A. 722; Wright v. Hart, 182 N. Y. 330, 75 N. E. 404; Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937; People ex rel. Appel v. Zimmerman, 102 App. Div. 103, 92 N. Y. Supp. 497.

The more serious proposition is whether the relator can obtain the benefits of its bid, inasmuch as the obnoxious clause was contained in the specifications, and we may assume that it joined in the competition knowing this fact, and also that the clause exacted an illegal requirement.

It is well to note that there is no claim by the respondents that the relator's bid was not awarded to it after a full and fair competition. Nor is it contended that the addition of the label to the journals would add to the cost of the printing to any appreciable extent. The ground for the refusal to approve the bond was solely that it did not contain the unlawful provision referred to. There is, therefore, this condition of affairs: The board, in order to restrict the bidding to a certain class of printers, inserted an unauthorized clause in its specifications, and which was to be embodied in the agreement. The supervisors did this knowing its illegality, and that its tendency,

if adhered to, would be to increase the cost of publication to the taxpayers, because it narrowed the list of bidders. The relator's bid as the lowest was accepted, but the contract would not be let to it without the unlawful provision. It did not belong to No. 55, and consequently cannot perform the agreement if the objectionable clause is to be a part of it. If it should enter into the agreement and perform, barring the furnishing of the label, it may be that the relator could recover the contract price (People ex rel. Rodgers v. Coler, Compt., 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605); but that is not certain. If its bond is approved, and the board should still refuse to enter into the contract with it, mandamus would not lie to compel its execution, for it contains the unlawful provision, and its execution or enforcement would not be decreed against the supervisors, for the public interests are to be subserved. If, however, the agreement should be entered into, a taxpayer, if he can show a waste of or injury to the county, may maintain an action, and obtain judgment enjoining the performance of the agreement. Section 1925, Code Civ. Proc.; Davenport v. Walker, 57 App. Div. 221, 68 N. Y. Supp. 161. The only way open to the relator, therefore, was to proceed upon the assumption that the supervisors would not insist upon the illegal clause if their attention was directed to it, or that said clause was surplusage. The relator adopted that course, but the board were still persistent in adhering to the form of their specifications. The relator is entitled to the benefit of his agreement, unless other printers refrained from bidding because of the vicious clause, or for some other tangible reason. The respondents have not, in their return to the writ, raised any issue impugning the fairness of the bid, or tending to show that there was a lack of competitors. Their defense rests only upon the ground that the bond of the relator did not comply with the specifications, in that it omitted the clause mentioned. This ground we deem untenable, and no warrant for refusing to approve the bond tendered.

It is urged that the relator, having submitted its bid upon specifications containing the illegal clause, is estopped from now asserting its illegality; in other words, the relator must enter into the agreement knowing it cannot fulfill, disregard the provision, and run the risk of getting pay for the work performed, or else abandon its bid, and allow the respondents to contract with some other printing establishment, which will perform the unlawful part of it. The first provision, if carried out, would place a premium upon deception, and the other would enable the board to accomplish indirectly the illegal purpose intended by the resolution. The principle of estoppel in any event is not applicable. Marshall & Bruce Co. v. Nashville, 109 Tenn. 495, 71 S. W. 815. Before the respondents can successfully raise the question of estoppel against the relator, they must show that they are acting in good faith themselves. They ought not to be heard to complain of the lack of fairness on the part of the bidder, when their only reason for declining to accept his bond is that it does not contain a condition requiring the obligor to violate the organic law. The principle of estoppel applies where a man by his conduct has deceived another to his damage, and it therefore

precluded from repudiating that conduct. There is no claim that the county of Onondaga has suffered any damage by the refusal of the relator to subscribe to the obnoxious provision. The principle of estoppel was never carried to the fanciful extent of permitting public officers to bind a man to an unlawful contract, or to repudiate an agreement because a proposed party to it declines to be held to the illegal provision. If the proposed agreement is rendered unjust because of the acts complained of, it may have been canceled; but no such claim was raised by the affidavits or suggested on this appeal. If the defendants had insisted on disregarding all bids, and called for new proposals with the illegal clause expunged, an entirely different situation would be presented for our consideration. Apparently, the board of supervisors intentionally abstained from that course. We think mandamus is the proper remedy. People ex rel. West Side St. R. R. Co. v. Barnard, 110 N. Y. 548–556, 18 N. E. 354 et seq.; Baird et al. v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81.

The court below did not exercise its discretion in refusing to grant the writ, but placed its decision upon the claimed failure of the relator, as matter of law, to show his right to it.

No adequate excuse is offered by the respondents for their declination to approve the bond of the relator. If the price of the plaintiff's bid is unduly enhanced because of few competitors, or if for any just reason the agreement should not be entered into, those issues may still be raised in some way; but on the record presented to us the bond tendered should be approved.

Order should be reversed, with $10 costs and disbursements, and the writ granted, compelling the respondents to approve the bond presented by the relator, with $10 costs. So ordered. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent on opinion of ANDREWS, J., at Special Term.