15 N.J. Super. 178 (1951)
83 A.2d 61
KEYES ELECTRICAL SERVICE, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF CUMBERLAND AND WILLIAM E. SNELL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 25, 1951.
*180 Mr. Russell S. Henderson, attorney for plaintiff on motion to continue restraint, and respondent to motion to strike complaint.
Mr. Bertram R.B. Aitken, attorney for defendants on motion to strike complaint, and respondent to motion to continue restraint.
WOODS, J.S.C.
The cause before us is in lieu of the prerogative writ superseded by Rule 3:81-1.
Counsel for the plaintiff moved for a continuance of restraint pending the determination of the proceedings. The court allowed the continuance.
The cause arises out of the action taken by the board of chosen freeholders (March 15, 1951) in the form of a resolution adopted to advertise for bids on electrical work to be performed in the construction of an addition to the Cumberland County Hospital in accordance with plans and specifications prepared by Walter L. Custer, architect. On April 5, 1951, bids were received and opened on all the work to be performed. The court is concerned with the electrical work bids only. On that date the board received the following bids to their proposals:

 MEL DOWNS ELECTRICAL CONSTRUCTION CO.
 Bridgeton, New Jersey Bid: $4,777
 COMPTON ELECTRICAL CO.
 Audubon, New Jersey Bid: $3,604
 ELIHU D. DELL'ARINGA
 Vineland, New Jersey Bid: $3,365
 WILLIAM E. SNELL ELECTRICAL CONSTRUCTION
 Vineland, New Jersey Bid: $3,840
 KEYES ELECTRICAL SERVICE, INC.
 Bridgeton, New Jersey Bid: $3,500

The board of chosen freeholders advertised in conformity with R.S. 40:25-2 which reads as follows:
"Contracts; bids for expenditures over $1,000; advertisement and award
*181 No officer, board, commission, committee, department or other branch of any county government shall enter into any contract for the doing of any work or the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended together with any other sums expended or to be expended for the same immediate purpose and all matters relating thereto exceeds in the aggregate the sum of one thousand dollars, without first publicly advertising for bids therefor. All such contracts shall be awarded to the lowest responsible bidder. Any person authorizing, consenting to, making or procuring to be made any contract or agreement in violation of any of the provisions of this chapter or making or procuring to be made any payment for or on account of any contract or agreement made or entered into in violation of any of the provisions of this chapter shall be guilty of a misdemeanor."
Plaintiff, Keyes Electrical Service, does not attack the proposal advertisement procedure, nor the validity of the advertisement as to specifications.
On April 12, 1951, the board of chosen freeholders, agreeable to the statute reservation and bid proposal, elected to reject all electrical bids and immediately, or shortly thereafter, authorized re-advertising for, receiving and opening of bids for electrical work, labor and materials in connection with the construction, alterations and additions to the Cumberland County Hospital in accordance with amended plans and specifications prepared by Walter L. Custer, architect.
Before the court is the copy of the resolution as adopted by the board of chosen freeholders on April 12, 1951, asserting the rejection of all the electrical bids and authorizing the readvertising for new bids on amended specifications, as well as a copy of the bid proposal for the receiving of bids on May 4, 1951. The court need not quote these in entirety, but refers to paragraph (j) of the amended specifications. This paragraph reads as follows:
"It is understood and agreed that all labor employed by all Contractors on this project will be such as will work with the other trades employed on the project so that there will be no dissention between trades. All labor employed on this project shall conform to local labor union practices."
It is to this amended section of the specifications that plaintiff directs its attack.
*182 In laying the foundation for attack, counsel for the plaintiff recites that a discussion by board members followed the opening of bids and that one Walter Myers, a member of the board of chosen freeholders, made a statement to this purport:
"That he had been advised by labor Union representatives or otherwise that if the contract were awarded to the Plaintiff on its low bid of $3,500.00, that there would be trouble on the Building Project because Union Labor of the general contractor would not work with the Plaintiff and that there may be picketing of the work. In any event, it appeared that the plaintiff was non-Union and would not work in harmony with the general contractor and would result in a delay in the completion of the work, etc."
Counsel for the defendant admits such remarks were made or words of similar purport. To supplement and clarify this quotation, the court has before it depositions taken of Mr. Myers, chairman, Mr. Meade, newsman reporting the proceedings to the papers, and of the clerk of the board of chosen freeholders.
At any rate, thereafter, on May 4, 1951, on re-advertisement and with the amended specifications submitted by the board's proposal, the following bids were received and opened:

 MEL DOWNS ELECTRICAL CONSTRUCTION CO.
 Bridgeton, New Jersey Bid: $3,950
 COMPTON ELECTRICAL CO.
 Audubon, New Jersey Bid: $3,465
 WILLIAM E. SNELL ELECTRICAL CONSTRUCTION
 Vineland, New Jersey Bid: $3,333

It is to be observed from the foregoing that two of the original bidders stayed out on the second proposal-bid. They were Elihu D. Dell'Aringa and Keyes Electrical Service. It is noteworthy, too, that the second bid of Mel Downs Electrical Construction Co. was $827 lower than its first bid; that the Compton Electrical Co. bid was lower by $139 than its first bid; and that the William E. Snell Electrical Construction bid was $507 lower than its first. And still further, that the Snell bid as of May 4, 1951, was $167 lower than the only bid submitted by Keyes Electrical Service.
*183 Thereafter, on May 10, 1951, the board of chosen freeholders awarded a contract for the electrical work to William E. Snell Electrical Construction of Vineland, New Jersey, one of the defendants to this suit, agreeable to the bid-proposal in the amount of $3,300.
Plaintiff asserts that it refrained from putting in its bid because it was precluded from doing so by specification (j) which was designed to exclude the firm. In the matter before the court, plaintiff contends:
1. It has a status to sue;
2. The action of the Board of Chosen Freeholders of Cumberland County in excluding the plaintiff from further bidding and in rejecting its bid was arbitrary, capricious and violative of plaintiff's rights.
On the first contention, the plaintiff cites Waszen v. Atlantic City, 1 N.J. 272, 63 A.2d 255, 257 (1949). As to status, the case cited, as well as others referred to in this citation, sustained his point from the standpoint of taxpayer.
On the second contention, the court must sift the premise and the reasoning. Plaintiff assumes that "The action of the Board in excluding from further bidding and in rejecting its bid, was arbitrary, capricious and violative of its rights." An analysis of this declaration lays open (a) a begging of the question: Did the Board actually exclude plaintiff from further bidding? and (b) "Was the rejection of all bids arbitrary, capricious and violative of plaintiff's rights?"
Counsel contends the specification (j) clause is unlawful and cites Paterson Chronicle Co. v. Paterson, 66 N.J.L. 129, 48 A. 589 (Sup. Ct. 1901). Specifically, here the mayor and aldermen of the City of Paterson declared themselves to favor anything calculated to benefit the working people and to patronize such establishments as recognize trade unions and pay union wages to their employees, and "Resolved, that in pursuance of such principle that the printing and stationery committee * * * be * * * directed to confine all orders for printing and advertising * * * to such offices and newspapers that recognize the typographical union, and that the *184 finance committee and comptroller audit no bills for printing done in other than union printing offices." (The italics are the court's.) Here the court concluded, citing numerous cases, that "it excludes all persons or corporations from contracting with the city not of a specified class, which fact tends to create a monopoly, and impose a possible additional burden on the taxpayers."
Counsel further quotes McQuillin on Municipal Corporations. With this quotation the court raises no dispute and agrees:
"On principle, it would seem that, as the primary duty of the public officers is to secure the most advantageous contract possible for accomplishing the work under their direction, any regulation which prevents the attainment of this end is invalid. A law demanding competition in the letting of public work is intended to secure unrestricted competition among bidders, and hence, where the effect of an ordinance is to prevent or restrict competition and thus increase the cost of the work, it manifestly violates such law and is so void, as are all proceedings had thereunder. It may be further observed that, according to the judicial view so far declared, all such ordinances are void on the constitutional ground of discrimination."
And the court quite agrees with the statement taken from Teller, Labor Disputes and Collective Bargaining (1940), vol. 1, and the principles laid down in Mugford v. Mayor and Council of Baltimore, 44 A.2d 747 (Md. 1946), which enunciated a rule that must work both ways. Counsel for the plaintiff here might have added: "By the same force of reasoning a citizen who is a member of a union cannot, by that fact alone, be barred from a position in the public service."
The court, in reading the precedents and cases cited by the plaintiff, observes that resolutions, ordinances and specifications adopted and brought into question, almost without exception show that they
"establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, *185 they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appliance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, 227.
On the argument that there might be costly delays, counsel for the plaintiff meets this handily by citing State ex. rel. United District Heating v. State Office Bldg. Comm., 124 Ohio St. 413 (Ohio Sup. Ct. 1931), and as to the point of "unfair labor practice" points out the Taft-Hartley Act (29 U.S.C.A. secs. 151-166), sec. 8 (a) (3), provisions dealing with "employer," "discrimination" and "membership in any labor organization."
To all of the foregoing statements we subscribe, but must conclude that although generally applicable, they are not dispositive of the case here under scrutiny and review. On the one hand, we have resolutions, ordinances and directives which in effect make membership in a labor union a condition precedent; on the other hand, as here, we find the condition precedent a standard of employment and practice. It is the latter that the proposal bid, section (j), in our interpretation comprehends. It was what the mayor and council of Paterson sought to do, but capriciously and discriminatingly failed to do.
The section (j) attacked by plaintiff did not exclude the plaintiff or non-union firms from bidding or from becoming the lowest responsible bidder. R.S. 40:25-2. On the second re-advertisement of proposals for bids, had the plaintiff been the lowest bidder and had been then refused the award of contract without demand for a certificate of ability or hearing on responsibility (R.S. 40:25-11 and 12), surely his claim *186 and redress would have been recognized and granted. As it was, the board of chosen freeholders rejected all bids, as they had a right to do under the statute as well as the proposal bid. (See Proposal and R.S. 40:25-10).
Our attention is called specifically to conversations and discussions at the first meeting of receiving of bids as they are set forth in depositions filed in these proceedings. Plaintiff's counsel argues that these statements made by freeholder Myers, reflects the "obvious intent to limit bidders," basing his reasoning on and pointing out the fact that other subcontracts in the building project "did not include clause (j)."
In raising the point of reasonableness of specification, Justice Colie in Armstrong v. Board of Commissioners of the City of Trenton, 137 N.J.L. 332, 59 A.2d 807, at page 808 (Sup. Ct. 1948), wrote: "in considering the validity of the specification under attack, we start from the premise that the governing body of the municipality has a considerable breadth of discretion in framing specifications to govern work to be performed for the municipality. Ryan v. Paterson, 66 N.J.L. 533, 49 A. 587 * * *. The test is the reasonableness of the specification and reasonableness is to be determined by the actual effect, not by the intended effect that existed in the minds of the framers." (Italics ours.) In this controversy, the learned justice set aside the specification which plainly excluded the lower bid and "since it bears no relation to the purpose that the governing body sought to accomplish." The court refers to this case without stating the facts reported. In that case, however, the plaintiff charged the commissioners' action relative to the specification quoted as being arbitrary, discriminatory and stifling.
Assuming, as stipulated, "that certain remarks were made by Director Walter H. Myers as set forth in his testimony and the testimony of Mead Landis of the reportorial service of the Bridgeton Evening News (see testimony of record) relative to picketing if the electrical contract was given to Keyes Electrical Service, can one conclude that specification (j) excluded the plaintiff? In reading this deposition we note *187 these statements: (1) that the work might be held up if the award was made that night (see deposition, page 4), (2) a similar statement to this purport: "And when we were told ahead of time we would be picketed and that the work would not progress, we decided to reject all bids and re-advertise."
In reading these depositions the court does not find as stipulated that plaintiff's name was mentioned. Be this a fact or not, we cannot say that such statements could bind the board of chosen freeholders.
This court will not analyze the prejudices or fears of the members of the board of chosen freeholders in the absence of "showing bad faith," nor will it "substitute its judgment on an administrative matter concerning the affairs of municipal government clearly within its province." "The mere fact of a very stringent specification * * * will not of itself and in the absence of proof of fraud establish arbitrariness and bad faith." Kingston Bituminous Products Co. v. City of Long Branch, 124 N.J.L. 472, 12 A.2d 237 (Sup. Ct. 1940).
The results attained in the readvertising proposal bids, amply justify the action taken by the board of chosen freeholders.
Finally, the court's attention has been called to recent decisions of the U.S. Supreme Court asserted to be directly in point for determination of the case sub judice. (See letter June 19, 1951, of plaintiff's counsel.) This argument and the citation advanced, the court has answered, and is met by defense counsel's statement in his brief, pages 8 and 9.
Our findings are that:
1. The action of the Board of Chosen Freeholders of Cumberland County taken on April 12, 1951, and subsequent thereto, culminating in the awarding of an electrical bid to William E. Snell on May 10, 1951, was lawful.
2. That such action did not exclude the plaintiff from bidding the second time.
3. And that the specification (j) in the proposal bid of re-advertisement was a standard of employment practice set *188 up rather than class discrimination, and not an arbitrary, capricious act violative of plaintiff's rights.
The restraining order entered and continued, will be dissolved. Judgment on the pleadings will be entered for the defendants against the plaintiff with costs.