(57 App. Div. 221.)

### DAVENPORT v. WALKER et al.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

COUNTIES—CONTRACTS—UNION LABOR—RESTRICTING CONTRACTOR—PUBLIC POLICY.

A board of supervisors advertised for bids for work on a county building, but refused to award the contract to the lowest bidder because of his refusal to contract to employ only union labor, the grounds of such action being a resolution of the board that only union labor should be employed, and that, if nonunion men were employed, the work might be delayed by strikes. *Held*, that in an action by a taxpayer under Code Civ. Proc. § 1925, to prevent waste of the county funds, an injunction pendente lite was properly granted to restrain the awarding to a higher bidder of a contract containing the clause as to union labor objected to by the lowest bidder.

68 N.Y.S.—11

Appeal from special term, Albany county.

Action by Samuel J. Davenport against Peter Walker, chairman of the board of supervisors of Albany county, Robert J. Higgins and another, constituting a committee of the board, James Gorman, and the board of supervisors. From an order granting an injunction pendente lite restraining the letting of a contract to the defendant Gorman, defendants, excepting Gorman, appeal. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

William E. Woollard, for appellants.
Frederick E. Wadhams and James J. Farren, for respondent.

PARKER, P. J. The board of supervisors of the county of Albany has authority to construct a reception pavilion in connection with the Albany Hospital. Such board appointed a committee of three of its members to adopt plans and specifications, let contracts, and supervise the construction of such pavilion. The committee advertised for sealed proposals for the construction of such building, to be divided under six different heads, viz. "mason work," "carpenter work," "painting work," "roofing work," "plumbing work," and "heating work"; a separate bid to be made for each, and such bids to be opened April 17, 1900. Upon the opening of such bids it appeared that for the "roofing work" there were but two bids; one by James Gorman, for the sum of $1,000, and the other by James Ackroyd, for the sum of $724.48. At that time the committee inquired whether Mr. Ackroyd would agree to employ "none but union men or organized labor on the work," and were told, in substance, that he would not discriminate against union men; neither would he agree to employ only union men; but that he would in all respects conform to the requirements of the labor laws of the state. The matter was then postponed until the 26th of April, 1900, when the committee again met, and Mr. Ackroyd appeared before it, and asked that the contract be awarded to him. The committee thereupon tendered to Mr. Ackroyd, for his signature, a contract containing the following clause, and offered to let to him the work if he would sign such contract, viz.: "The party of the second part further agrees to employ no workmen on the work mentioned in this agreement except members of some trades organization, when practicable." Mr. Ackroyd refused to sign a contract with that clause in it, but then and there offered to sign a contract in compliance with the notice for bids, again stating that he would observe all the labor laws of the state, and demanded that the work be let to him under such a contract. The committee refused to do so, and were about to let the work to Mr. Gorman, under his bid of $1,000, when this action was instituted by the plaintiff, as a taxpayer, to perpetually enjoin such committee and the board of supervisors from so letting the work to Gorman. An injunction was granted pendente lite by the special term, and from such order this appeal is taken.

It appears very clearly from the record in this case that Mr. Ackroyd was ready to contract to do the work in question at least 27

per cent. cheaper than the price at which the supervisors were about to let it to Mr. Gorman; and it is equally clear that Ackroyd was financially as responsible, and in all respects as experienced a builder, and as well equipped to do the work, as Mr. Gorman was. Therefore the rejection of Ackroyd's bid and the acceptance of Mr. Gorman's was apparently a clear waste of the taxpayers' money. It is not, however, every act which would result in waste that may be restrained by a taxpayer's action under section 1925 of the Code. It is only in those cases where the acts complained of are without authority, and illegal, or where corruption, fraud, or bad faith amounting to fraud exists, that relief can be had under such section. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471. And therefore, unless this case comes within that rule, this action cannot be maintained. The explanation given by the supervisors why they reject Mr. Ackroyd's bid, and agree to pay Mr. Gorman 27 per cent. more for the same work, is that Mr. Ackroyd refused to insert in his contract an agreement to the effect that in its performance he would not employ any "nonunion" man upon the work, while in the contract to be made with Mr. Gorman a clause is to be inserted prohibiting him from employing any but union men to do such work. Such was the sole reason for their rejection of Mr. Ackroyd's bid. The reason given by the defendants for insisting upon such a clause presents the following singular and serious state of facts: The mechanics and workmen engaged in the several building trades specified in the advertisement for bids above mentioned had some time during the year 1899 organized into separate and distinct organizations for the purpose of advancing wages and establishing a shorter number of hours as a working day in their respective trades. On or about January 1, 1900, these separately organized trades joined together for concerted action in what was known as the "Building Trades Council of Albany, N. Y."; such council being composed of representatives from each of such trades organizations. On such day such council notified every contractor in the city of Albany that a demand for an increase of wages in each of the several trades would be made on the 1st day of May following, and also that all work must be performed by members of these respective trades organizations only. It also then notified such contractors that, in case their demands were not acceded to by the 1st day of May, 1900, the members of such trades organizations would forthwith quit their employment, and that such demands must be acceded to as to each organization, or the members of all would so quit. The defendants further claim that the organizations represented by such council composed about 90 per cent. of all the workmen, laborers, and mechanics, skilled and unskilled, in the city of Albany, employed in such building trades; and that it was generally conceded that no work of any magnitude in such trades could be carried on in such city unless such demands were acceded to. This claim, however, was denied on the part of the plaintiff. The defendants further claimed that there was great need for the completion of said pavilion, and that, owing to the conditions above stated, they were persuaded that, if an attempt was made to employ any mechanics upon any part of

the work thereon who did not belong to such trades organization, it
would result in a strike by those who did, and thus delay the whole
work, and cause greater expense in the end to the county than would
the acceptance of the larger bid; that all the contractors on the whole
work, other than Mr. Ackroyd, contracted not to employ any men
other than those belonging to such organizations. It also further
appears that on December 19, 1899, the board of supervisors had
adopted a resolution to the following effect: "Resolved, that in the
letting of all contracts in the county ot Albany, where money for
this county is appropriated, the work be let only to contractors resi-
dent in this county, and that all labor employed thereon shall be
residents of Albany county, and. members of trades organizations,
when practicable." And Mr. Ackroyd, at the time of the opening
of the bids, was notified by the committee that, although such resolu-
tion was not referred to in the advertisement for bids, they consid-
ered it as binding as if in the advertisement. Does such explanation
fairly justify the defendants in rejecting the lesser bid, and in requir-
ing the clause in question to be inserted in whatever contract they
should make for the work? It cannot be doubted but that the threat
made by the building trades council to all the contractors of the city
of Albany was an unlawful act. Its purpose and its effect was to
prevent all mechanics, except those who belonged to such trades
organizations, from obtaining employment in the city in their re-
spective lines of work. It was an effort, not merely to benefit them-
selves by an increase of wages and the lessening of a day's labor,
but to do so at the expense of all other workmen engaged in similar
employments. A discussion of the principle, which must control all
similar organizations, and which marks the distinction between what
is just and lawful in their purpose and methods and that which is vio-
lative of the public good, and therefore illegal, is not necessary here.
The principle laid down in the case of Curran v. Galen, 152 N. Y. 33,
46 N. E. 297, 37 L. R. A. 802, is sufficient for this case, and stamps the
action of the council as one which will not be tolerated by the law,
nor be permitted by the courts. The question, then, is presented,
whether public officers having in charge the letting and control of
public work, to be done at the public expense, may aid and abet such
an unlawful attempt on the part of a trades organization by refusing
to let any public work to those contractors who will not accede to
such an unlawful demand. Can it be held, upon any tolerable view
of the case, that the public officers of a county may, in concert with any
organization of any kind, lawfully engage in an attempt to force
all laborers in the county into such organization, or else into starva-
tion for the want of employment? And is such concert of action in
the least justified by the plea that by so doing they will be more likely
to get the public work done in less time, and possibly with less loss
and expense? In my judgment, not only the action of the council,
but also the action of the defendants in this case, in demanding that
none but members of the organizations be employed upon this work,
was an act so clearly against public policy, and so violative of con-
stitutional rights and of the first principles of our form of govern-
ment, that it should not be for a moment tolerated, nor permitted to

excuse or justify any act of theirs. And it is to be noticed, in the case before us, that the resolution of the board of supervisors, above referred to, and which seems to have been controlling upon the committee when it rejected Mr. Ackroyd's bid, was passed on December 19, 1899, while the threat of the council and its demand upon the contractors was not made until January 1, 1900. Thus the board seems to have been in advance of the trades organizations in its determination to deprive the nonunion workman of his opportunity to obtain employment in the city of Albany. The case therefore resolves itself into this: The board is about to expend $1,000 of the public moneys under a contract that is clearly unlawful, and not to be tolerated. In order that it may make such a contract, and so require the work to be done under such an illegal restriction, it rejects a bid of $724.48 to do the same work under a contract that is in all respects legal, and by a contractor that is undoubtedly pecuniarily responsible. It rejects a lawful and valid contract for an unlawful and invalid one, and thus wastes the public moneys without justifiable excuse. In my judgment, such facts are sufficient to sustain this action, and an injunction pendente lite was properly allowed.

As to the errors of practice complained of in the points of the appellant now before us, I do not discover any that should result in a reversal of the order appealed from. Such order, therefore, should be affirmed, with $10 costs and disbursements. All concur; SMITH, J., in result.