Baritel G. Albert, J.
This is an application brought on by petition and order to show cause under article 78 of the CPLR wherein petitioner seeks a judgment from this court annulling the determination of the respondent made on July 26,1966 rejecting petitioner’s bid for awarding to the petitioner Nassau County Contract Number 1175-B-3, as not being the lowest responsible bidder and directing that the award of this contract be made to the petitioner by the respondent County of Nassau because it was the “ lowest responsible bidder ” in accordance with the specifications and the bid proposal requirements.
The facts are as follows: The petitioner is a domestic corporation in the business of selling, servicing, installing and maintaining signal alarms, fire alarms and other electrical equipment and has its place of business in Nassau County.
In June, 1966, the respondent county, pursuant to a resolution duly adopted, gave notice to bidders inviting sealed proposals on Contract Number 1175-B-3, to be received by the County Executive of Nassau County on July 5, 1966, at which time the sealed proposals would be opened and read and the contract awarded as soon as practicable thereafter, for “ Traffic Signal Maintenance for Area Covered by Nassau County Police District.” That prior to the date designated for the opening of bids on the foregoing bid proposal on July 5, 1966, petitioner duly executed and submitted a sealed proposal on contract documents in accordance with the notice to bidders, on the forms *322 furnished by the respondent county, and the petitioner fully complied with every requirement and specification contained in the notice to bidders, contract documents and all other documents contained in the bid proposal forms which were furnished to the petitioner by the respondent county, the performance bond in the amount required by the respondent and an experience questionnaire advising of petitioner’s qualifications. Upon the opening of the bids it was indicated that petitioner’s bid proposal was $100,536.97; that the next lowest bid received by the respondent county was submitted by the Broadway Maintenance Corporation in the amount of $108,088.13; that the third lowest bid received by the respondent county was submitted by Littlefield Algier in the sum of $123,169.
On the morning of July 14, 1966 an officer of petitioner corporation was advised orally by a representative of the Department of Public Works of the respondent county, a Mr. Thomas 0 ’Donnell, that it was the successful bidder for the foregoing contract and petitioner was instructed to take over the maintenance contract at 12:01 a.m. on July 15, 1966. On the same day, namely July 14, 1966 at approximately 5:40 p.m. the petitioner received another call from a representative of the Department of Public Works of the respondent county to hold up and not to proceed for the time being, being simultaneously advised that the contract would probably start the following day. None of the foregoing facts are disputed by the respondent.
Petitioner also alleges that the Nassau County Police Department was advised by the county’s Department of Public Works that it (petitioner) was the successful bidder under the foregoing bid proposal and would thereafter be responsible for the service and maintenance of its traffic signal system, because the president of petitioner, on the morning of July 15, 1966, had received two telephone calls from two police precincts in Nassau County requesting immediate traffic light repairs by petitioner. That the petitioner must have been designated by the responsible officials in the Department of Public Works of the respondent county although a formal contract had not yet been signed, is further evidenced from the fact that petitioner was advised on July 14, 1966 that it was the lowest responsible bidder and service was to start on midnight of the next day, which obviously permitted insufficient time within which to draw and execute a formal contract. Subsequently and for approximately 10 to 12 days thereafter petitioner and its attorney were unable to obtain definite word from the respondent’s officials, including the Department of Public Works or the legal department as to what action the respondent contemplated taking; being delayed from *323 day to day. Late in the day of July 26,1966, petitioner received a notice of rejection in writing over the signature of Daniel T. Sweeney, Deputy County Executive, advising that the respondent did not consider the petitioner “ to be the lowest responsible bidder and the awarding of the contract to you would not be in the best interest of the County ’ ’; also that “ it is our intention to award the contract to the lowest responsible bidder”. (Exhibit “ C ” annexed to order to show cause.)
In the interim, between the 14th day of July, 1966 when petitioner was advised that it was the lowest responsible bidder, and July 26, 1966 when it was advised to the contrary, a number of interesting and significant events occurred, all of which bear upon the issues involved in this proceeding.
Attached to respondent’s verified answer to the petition and marked Exhibit “ 3 ” is a photo static copy of a letter dated July 14, 1966, on the stationery of the International Brotherhood of Electrical Workers Local Union No. 25 addressed to Commissioner Robert W. MacGregor as Commissioner of the Department of Labor of the respondent Nassau County and signed by Walter Kráker as business manager of Local 25. In this letter, this official of Local 25 “ vehemently protests an award of this contract by the County of Nassau to Long Island Signal, which is a non-union concern and he concludes that it would not be in the best interests of the citizens of Nassau County to aAvard contracts “to organizations of this type ” (meaning the petitioner corporation); and that he would “appreciate your immediate attention to this matter.”
Exhibit “2” attached to respondent’s verified answer is a photostatic copy of a letter with no letterhead addressed to Commissioner Simins of the Department of Public Works of the respondent county and signed by one Robert G. Lebohner, stating in substance that he was employed by the petitioner “ as an Electrician Fourth Year Apprentice during the period from March 12, 1965 to July 22, 1965 ”; and that during this period he worked on Nassau County Contract 1181-H but that he did not receive the prevailing rate of wages, and he asks the Commissioner to look into this matter and let him knoAv; and a similar statement was made by the same individual and apparently notarized by a notary public whose commission expired almost four months prior to the date of this statement.
Subsequently the county mentions as one of the reasons for its rejection of petitioner’s bid that it Avas informed that it had not paid the prevailing wage to its employees under a previous contract which it performed for the county for the same kind of Avork in 1964. The only substantiation of this statement is the *324 statement heretofore indicated from the individual, Lebohner, a previous employee of the petitioner who is now in the employ of Broadway Maintenance Corp., the second lowest bidder, who also has been pressuring the county to award the contract to it. Although petitioner has submitted very substantial proof refuting in its entirety the statement of the individual, Lebohner, indicating that he was not a fourth-year apprentice but a third-year apprentice in 1964 and that the official records of the corporation so indicate and that he received the prevailing rate of wages for his position of employment as approved by the New York State Department of Labor in 1964, the respondent county did not see fit to institute any inquiry or investigation whatever to ascertain the truth or falsity of this statement, nor has it replied to the proof submitted by the petitioner in any effort to refute petitioner’s evidence, nor has it requested the court for permission or for time to make such a response.
Some reference is also made by respondent concerning accusations by Nassau County labor leaders that the petitioner does not have or maintain an apprenticeship program for training apprentices to learn the trade. Although this is not in issue, it is nevertheless significant to note that in its reply papers submitted with the permission of the court and the consent of the respondent, the petitioner has attached as Exhibits “ E “ F ”, “ G ” and “ H ” photo static copies of communications from the New York State Department of Labor and the United States Department of Labor fully approving a complete apprenticeship program which this petitioner had adopted back in 1964 and continues at this date and has received their congratulations on being among the first in its field to have an apprenticeship training program approved by the New York State Department of Labor.
The court admires the honesty, frankness and candor with which the County Attorney, upon the argument of this application before the court, openly stated to' the court that respondent raised no substantial issue concerning the payment by the petitioner of prevailing wages or of the question of an apprenticeship program, but rather, whether the county had the right in its discretion to reject petitioner’s bid under paragraph “ K1 ” contained in Contract Number 1175-B-3 which reads as follows:
‘ ‘ peeve imon op delay
‘ ‘ The Contractor and his Subcontractors shall not employ on the work, any labor, materials or means whose employment, or utilization during the course of this contract, may tend to or in any way cause or result in strikes, work stoppages, delays, *325 suspension of work or similar troubles by workmen employed by the Contractor or his Subcontractors, or by any of the trades working in or about the buildings and premises where work is being performed under this contract, or by other Contractors or their Subcontractors pursuant to other contracts, or on any other building or premises owned or operated by the County of Nassau. Any violation by the Contractor of this requirement may, upon certification of the Commissioner of Public Works, be considered as proper and sufficient cause for cancelling and terminating this contract.”
This is set forth as part of the respondent’s first affirmative defense; and as part of its second affirmative defense it alleges that if petitioner were awarded the contract it would not be complying with article 21 of the proposed contract, which reads as follows:
“ labor law — If or when any of the work required to be done under this contract falls within the purview of the Labor Law ’, then and in that event the Contractor stipulates as follows: that on such work he will comply with the provisions thereof; that no laborer, workman or mechanic in the employ of the Contractor, sub-contractor, or other person doing or contracting to do the whole or any part of such work shall be permitted or required to work more than eight (8) hours in any one calendar day, or more than five (5) days in any one week, except in case of extraordinary emergency caused by fire, flood or danger to life or property; that the wages to be paid for a legal day’s work to all classes of such laborers, workmen or mechanics upon all such work, shall not be less than the prevailing rate for a day’s work in the same trade or occupation in the locality within the State where such work in final or completed form is to be situated, erected, or used; and in the like event that this contract shall be void and of no effect unless the person or corporation making or performing the same shall comply with the provisions of Section 222 of the ‘ Labor Law ’.”
The court has already dealt with the second affirmative defense under the Labor Law and will now discuss that part of respondent’s defense which concerns itself with paragraph “ K1 ” of the proposed contract, since the County Attorney as legal advisor to the County Executive and the Department of Public Works of Nassau County has advised these officials that since in his opinion they would have the right to terminate the contract if it was awarded to the petitioner after petitioner started to work thereunder and if and when the labor unions carried out their threat to bring about a work stoppage (as will be hereinafter dealt with), that therefore, in anticipation of strikes or work *326 stoppages which would be contrary to the interests of the County of Nassau, the respondent county would be justified in rejecting petitioner’s bid at this time rather than await subsequent trouble.
Our laws, both State and Federal, permit nonunion as well as union shops to bid on public works contracts. This is inherent in our existing statutes, as is the right of every citizen to make his own determination as to whether or not he desires to become a member of a labor union.
If the court were to indorse the interpretation based upon the afore-quoted paragraph “ K1 ” of the proposed contract that the respondent seeks to place thereon, it would vitiate completely any right that a nonunion shop now has to bid on a public works project, for then every department of government, municipal, State or Federal could justify the rejection of every bid submitted by a nonunion shop no matter how much lower the bid is than that of other bidders, on the premise that if they awarded the contract to the lowest responsible bidder they would be justified in terminating the contract as soon as work got underway if they received a threat from any • labor organization of a work stoppage on other jobs. This is hardly what our Federal and State Constitutions contemplated, nor does existing statutory or decisional law so hold.
This court does not interpret the language of paragraph ‘ ‘ K1 ’ ’ to give such arbitrary authority to the respondent county unless the petitioner, after being awarded the contract, affirmatively breaches the contract by breaching some of the terms or specifications thereof or by violating the terms and provisions of existing laws. In this regard I believe the language used by former Chief Judge Cardozo in Surace v. Danna (248 N. Y. 18, 21) is peculiarly apropos to the situation here presented when he said: “ Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension. The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity * * * Adherence to the letter will not be suffered to ‘ defeat the general purpose and manifest policy intended to be promoted.’ ”
We now reach that part of the situation presented here which the court feels is the real issue involved in this proceeding. Exhibit “ I ” attached to petitioner’s amendment to its verified petition is a photostatic copy of a communication labeled “ County of Nassau — Inter-Departmental Memo” dated July 25, 19G6 addressed to “County Execútive ”, from “Commissioner of Public Works; Subject: Contract Number 1175-B-3 ”, wherein Commissioner of Public Works, Herbert J. Simins advises the Comity Executive in substance that “ this letter is a *327 revocation of a previous letter dated July 8, 19G6 and signed by Acting Commissioner Borysicwicz in which he recommended the award of the above entitled contract to Long Island Signal Corp., the lowest bidder.”
Because I consider the substance of this letter so important in determining the basic issue involved in this litigation, I quote it herewith verbatim:
‘ ‘ I am taking this action because I do not believe that the awarding of this contract to Long Island Signal would be in the best interests of the County.
“ As you are aware, subsequent to the receipt of bids in this matter, we have been besieged with communications from different labor organizations in support of Local 25 ’s attempt to force us to award the contract to a union contractor.
“ The above entitled contract has a clause K-l, ‘ Prevention of Delay ’. This clause gives us the authority to cancel a contract should it cause labor problems.
“In view of the actions of Local 25 and various unions in support of Local 25, I feel we should do what is best for the County.
“ I therefore recommend that we reject the lowest bid. I will conduct an investigation into the responsibility of the second lowest bidder and will advise you of our recommendation upon the completion of that investigation.”
The language in the third paragraph of this communication is particularly significant, namely “we have been besieged with communications from different labor organizations in support of Local 25’s attempt to force us to award the contract to a union contractor.” (Emphasis supplied.)
It is abundantly clear, that, based upon the coercion, intimidation and threats (which will be dealt with hereinafter) the responsible officials of the respondent county felt it was perhaps the better part of discretion to award this contract to a higher bidder than the petitioner rather than face the wrath of labor union officials in their county, even though the actions of the latter would be illegal under existing law.
This court disagrees with the respondent’s County Attorney in his reasoning that the clause which would give the county authority to terminate a contract for a breach thereof can be anticipated to the point where a lowest responsible bidder is rejected on the theory that there may be a breach in the future after the contract is in full force and effect which might give the county cause for termination.
A reading of the affidavit submitted as part of respondent’s answer to the petition, by Robert W. MacGregor, Commissioner *328 of Labor for the respondent county, is particularly enlightening. In substance he relates that he received a telephone call on or about July 6,1966 (the day after the opening of the bids) from an official of Local 25, International Brotherhood of Electrical Workers, AFL-CIO, wherein he states that this official advised him that the petitioner, the low bidder on the contract, employed nonunion labor, and because of that the union ‘‘ wished to register a strong protest with the County Administration.” He states that the caller also told him that the petitioner had not paid the prevailing rate of wages on its last contract with Nassau County. It may here be noted that the petitioner was the successful low bidder and received the contract identical to that which is now in question for the year 1964-1965 and that it had completed its obligations under that contract with no apparent complaint from any source; also that petitioner had carried out public works contracts which it received under government bids on several score public works projects from municipal, Federal and State departments.
Commissioner MacGregor goes on to say that he was advised that the Department of Public Works had also received a communication from Broadway Maintenance Corp., the second lowest bidder objecting to the award of the contract to the petitioner. The Commissioner then states that he also received a letter dated July 14,1966 from Local 25 of the Electrical Workers Union (Exhibit “ 3 ”) protesting the award of the contract to the petitioner “ because it was a non-union shop”. He then received separate phone calls from the president and secretary (without identifying these individuals by name) of the Building Trades Council of Nassau and Suffolk Counties also protesting the award of the contract “ to a non-union firm ’ ’. He then says that ‘ ‘ matters came to such a pass that a conference was arranged, which was attended by the Deputy County Executive, Daniel T. Sweeney, myself and three Nassau County union leaders. During the course of this conference on Friday, July 22,1966, a statement was made to me that the unions would stop work on all County projects now in operation throughout the County if the contract was awarded to Long Island Signal Corp.” Commissioner MacGregor goes on to state that “as a result of the work stoppage threat, Chief Deputy County Attorney Leonard suggested that the union difficulties warranted our rejecting Long Island Signal Corp. as a responsible bidder because the contract contains the provision referred to as ‘ Prevention of Delay ’ which is fully set forth in Paragraph “ 6 ” pf Respondent’s Answer to the petition. This provision permits *329 the County to cancel any contract where the use of incompatible labor on jobs would cause labor problems and work stoppages.”
Stripped of all artificial facade, camouflage and pretense, and bringing this entire situation down to a common denominator, the question before the court for consideration and determination is whether or not the responsible officials of the respondent County of Nassau, after originally coming to the conclusion that the petitioner was the lowest responsible bidder, and indicating its award of the contract in question to petitioner, are now justified in permitting a number of labor union officials in Nassau County to substitute their judgment for that of the officials who were duly elected to public office by the citizens of Nassau County to carry out the government functions which they swore to do to the best of their ability and to support the Constitutions of the United States and the State of New York in so doing; and only because of the threats made by such labor officials of bringing about a county-wide work stoppage on all public works projects if the contract were awarded to the petitioner because it is a nonunion shop.
That this is the only issue before the court for determination is brought into even clearer focus by the County Attorney upon the argument of this application in answer to questions of the court to the County Attorney. The court inquired as to whether or not the respondent county questioned the financial responsibility of the petitioner; and whether or not the respondent county had reason to doubt the qualifications of the petitioner as to physical facilities and technical “know how ” in undertaking and completing the work required under the proposed contract; also, as previously stated as to whether or not the county seriously questioned the fact that petitioner was paying prevailing wages and maintained an effective apprenticeship program, to all of which the County Attorney answered in the negative. He then made it crystal clear that the county relied entirely on paragraph “ K1 ” of the proposed contract in exercising its discretion to reject the petitioner as the “ lowest responsible bidder ”, in anticipation of the possibility that the aforesaid Nassau County labor union officials would cause a work stoppage on county public works projects if the contract were awarded to the petitioner.
This court does not doubt for a moment that the county officials who made this decision did so in good faith believing that they were acting in the best interests of the county.
Who is there to say that if this action on the part of the responsible county officials is permitted to prevail, brought about *330 by threats, coercion and intimidations voiced by labor union officials, that tomorrow, in considering the bids on other public works projects, the labor union officials of a second or third lowest bidder who are more powerful, or more aggressive or more numerous may not issue the same kind of threats and use the same kind of coercive and intimidating tactics in an attempt to compel the county, or any other department of government, to award a contract to the second or third lowest bidder because the lowest bidder, although unionized, is a weaker union, or for some reason does not meet with the favor of the labor union officials representing the second or third lowest bidder. And what would be the position of our public officials if in the future they are again threatened if an award is to be made to the lowest bidder who is in disfavor by certain labor union officials because the lowest bidder employs members of a union the color of whose skin does not meet with their favor, or whose religious or political beliefs do not meet with their favor. This can go on ad infinitum.
Who is to say, if we may conjecture for a moment, that this entire action on the part of the labor union officials involved, was not instigated by the second lowest bidder in using every means possible, through its labor union officials, to attempt to force the county to award the contract to it, although it would cost the taxpayers approximately eight thousand dollars more. Perhaps tomorrow a similar situation would cost the people of the county an additional eight million dollars. Although the facts may differ, the principle, both moral, ethical and legal, is the same.
The question presents itself as to whether this country is to continue with a form of government where law is pre-eminent, or whether we are to become a government of men. The answer is very obvious and has been for centuries. The eminent William Pitt in defending John Wilkes before the House of Lords two centuries ago stated the principle very clearly when he said: “ When law ends tyranny begins.” Millions of Americans have fought and died through the years in all parts of the world for the rights of men to live in freedom under forms of government where the rights of the people are pre-eminent. If our duly elected public officials succumb to threats and intimidation on the parts of people who would flout the law of the land, then all this will have been in vain, and certainly the courts will not approve or condone such conduct.
This court is not unaware of the decisional law which permits public officials to use their sound discretion, absent any element of fraud or collusion, in awarding contracts in many instances *331 to those who arc not necessarily the lowest bidders pecuniarily. But in all such cases issues have arisen concerning financial responsibility and the physical ability and the questionable “know how ” on the part of the lowest bidder. Where such issues arise it is clearly the law that the courts will not substitute their judgment for that of the governmental agency involved. These cases are however a far cry from the situation before the court at this time. Here it is abundantly clear that the proposed action on the part of the respondent county is brought about by coercion, intimidation and the threat to call a strike or cause a work stoppage on county projects which would clearly be contrary to law.
This court doubts that any responsible law-abiding labor union official in Nassau County would actually lend himself to such an act considering all of the circumstances involved herein. And if perchance the court is in error in its surmise, and such a state of events is brought about, the county would undoubtedly take the necessary steps under law to deal with such a situation. To come to a different conclusion under the facts here presented and to permit the respondent to take what today may seem the easier course, would only create a “Frankenstein” for the future and a precedent which could ultimately cause a breakdown of law and order with the resultant anarchy that follows.
No one believes more than does this court in the rights of labor to organize and to bargain collectively and to its right to strike when justified within the framework of existing statutes and decisional law. Attempts to intimidate and coerce public officials in the exercise of their duties in behalf of the general welfare of the people by means of threats to take action which would be in derogation of the general welfare do not come within the purview of the rights granted to organized labor ander existing law and are contrary to the public interest.
Section 2206 of the County Government Law of Nassau County (L. 1936, ch. 879, as amd.), taken from section 103 of the General Municipal Law of the State of New York, clearly sets forth the terms and conditions under which contracts on public works projects must be awarded, provided the bidder meets with all of the requirements therein set forth, the applicable language being “ the contract shall be let to the lowest responsible bidder ”. That the petitioner is the “ lowest responsible bidder ” in this case has been overwhelmingly established, and the court concludes that under all the circumstances involved herein petitioner has met the requirements of existing law and that the county would not be justified and that it would not be in the best interests of the public welfare to award this contract to *332 anyone other than “ the lowest responsible bidder,” which in this instance is the petitioner. (See U. S. Const., 14th Arndt., § 1 [Equal Protection of the Laws]; also N. Y. S. Const., art. I, § 11; U. S. Code, tit. 29, §§ 158, 163; People v. Letterio and People v. Kohler, 16 N Y 2d 307, 314 [concurring opn. Bergan, J.; Weinstein v. New York City Tr. Auth., 49 Misc 2d 170.)
Accordingly the court directs that judgment be entered herein directing the public official or officials of the respondent County of Nassau who are authorized to make the award of Contract Number 1175-B-3 to make such an award to the petitioner herein as the “ lowest responsible bidder ”.