THE MODERN CONTINENTAL CONSTRUCTION CO., INC. *vs.*
MASSACHUSETTS PORT AUTHORITY.

Suffolk.   October 9, 1975. — March 3, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Public Works.   Contract,* Public works, Bidding for contract.
*Massachusetts Port Authority.*

Where it appeared in a suit in equity that the plaintiff, a nonunion construction firm, was the lowest responsible and eligible bidder for the draining and filling of about 100 acres between two runways at the General Edward Lawrence Logan International Airport under a solicitation for bids by the Massachusetts Port Authority which reserved the right "to reject any and all bids" and required the successful bidder to certify "that he is able to furnish labor that can work in harmony with all other elements of labor employed," that the project required the successful bidder's employees to work in close proximity to, and to interact with, the workers on the many other construction projects at the airport, that the business agent for a local union threatened the Authority with difficulty, "including picketing" if the contract for the project was awarded to the plaintiff, and that the Authority voted to reject all bids in the public interest because of the likelihood of "a disruptive labor dispute, including picketing" with its adverse effect on "all ongoing constructions," and because of the comparatively small size of the project and the slight difference between the plaintiff's bid and the second lowest bid, it was held that nothing in the record disclosed error in the trial judge's conclusion that the Authority's rejection of all bids was within its discretion, and the judgment dismissing the bill was affirmed.   [826-831]

BILL IN EQUITY filed in the Superior Court on January 23, 1974.

The suit was heard by *Ronan*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Morris M. Goldings* (*Herbert D. Friedman* with him) for the plaintiff.

*John W. Arata* for the defendant.

REARDON, J. This is a bill in equity brought by The Modern Continental Construction Co., Inc. (Modern), seeking a declaration that it was entitled to the award of a contract by the Massachusetts Port Authority (Authority) on the basis of a low bid or, alternatively, that it was entitled to damages from the Authority for the Authority's failure to award to Modern the contract in question. After trial a judge of the Superior Court dismissed the bill and Modern appeals. We refer to the findings of the trial judge.

Modern is a nonunion construction firm which was qualified to undertake and complete a project at the General Edward Lawrence Logan International Airport. About July 24, 1973, the Authority, which operates the airport, applied for Federal funds to aid in a development project involving the drainage and filling of about 100 acres between two runways. The Federal Aviation Administration subsequently agreed to furnish fifty per cent of the cost of that project, and it was undertaken in accordance with the pertinent provisions of the regulations of that agency. Section 152.53 of these regulations contains a mandate that each contract for a project of more than $2,500[1] "must be awarded on the basis of public advertising and open competitive bidding under

---

[1] At the time this controversy arose in 1973 the maximum contract exempt from this regulation was $2,000. This was increased to the current figure of $2,500 by amendment in 1974. 39 Fed. Reg. 19349 (1974).

369 Mass. 825 827

Modern Continental Constr. Co. Inc. *v.* Massachusetts Port Authy.

the local law applicable to the letting of public contracts." 14 C.F.R. § 152.53(a) (1975). The Authority solicited bids for the projects in question, reserving the right "to reject any and all proposals," and also requiring the bidder to certify "that he is able to furnish labor that can work in harmony with all other elements of labor employed or to be employed on the work." The bids were opened on November 8, 1973, and Modern's bid of $721,030 was the lowest of those submitted. In December of 1973 the Authority had approximately $60,000,000 worth of ongoing construction and projects. By letter dated December 5, 1973, the business agent for Local 4 of the Operating Engineers advised the Authority that Modern "does not observe area standards for operating engineers, and it is our policy to publicize this fact by various means, including picketing." Local 4 engineers are operators of heavy construction equipment and many members of this local were engaged in the construction under way at the airport. The Authority on December 20, 1973, voted to reject all bids submitted on the project in question on the basis, according to the judge's findings, that "there was a likelihood that the award of this contract to . . . Modern would result or give rise to a disruptive labor dispute, including picketing, and that, as a consequence, such a dispute could adversely affect all ongoing constructions." He also found that a majority of the members of the Authority were of the opinion that the comparatively small size of the project [2] and the slight difference in bids between that of Modern and that of the second lowest bidder [3] did not justify the risk of a serious labor dispute, and that it was therefore in the public interest to reject all bids. Thereafter, the project with slight changes was once again submitted for bids, Modern was not the low bidder as to this resubmitted project,

---

[2] Modern's low bid was $721,030.

[3] The second lowest bid was $722,170.

and the contract was awarded to another construction company.

The judge ruled inter alia that the Authority was bound to observe G. L. c. 30, § 39M, as amended by St. 1967, c. 535, § 4, relating to the construction of public works,[4] which provides that contracts be awarded "to the lowest responsible and eligible bidder," but ruled also that the rejection of all bids by the Authority on December 20, 1973, was authorized by that chapter and section in that it provides "that such awarding authority may reject any and all bids if it is in the public interest so to do." § 39M (a). Modern had certified that it could furnish labor able to work in harmony with other elements of labor employed at the airport. The judge, however, ruled that the requirement that a bidder be able to work "in harmony" is "not satisfied merely by a bidder's unilateral declaration that he can so do." The judge concluded that the rejection of all bids on December 20, 1973, was within the Authority's discretion and that Modern "has not sustained the burden of establishing that the Authority acted in bad faith or in an arbitrary or unreasonable manner." We find nothing in what is before us to enable us to conclude that the judge in so ruling was in error.

There is no dispute that Modern ran a nonunion operation and that notice had been received by the Authority

---

[4] General Laws c. 30, § 39M, by its terms does not apply to contracts of the Authority ("Every contract for the construction . . . of any public work . . . *by the commonwealth or by any county, city, town, district, or housing authority*" [emphasis supplied]). § 39M (*a*). However, the judge ruled that the Authority, upon execution of the grant agreement, bound itself to award the contract on the basis of "open competitive bidding under the local law applicable to the letting of public contracts" (14 C.F.R. § 152.53[a] [1975]), and that G. L. c. 30, § 39M, was the only local law applicable which would satisfy the Federal regulations. The Authority takes the position that for the purpose of this appeal it will not challenge this ruling. We assume, therefore, without deciding that the letting of this contract was governed by the terms of G. L. c. 30, § 39M.

from a labor representative threatening difficulty if the Authority went ahead with Modern on the project. In these circumstances the Authority had before it the problem of whether Modern could actually complete the project in harmony with other contractors and labor at the airport. In the face of these facts, and given the provisions of the bid proposal and G. L. c. 30, § 39M, it was open to the Authority to reject all bids, and the aforementioned problem of labor "harmony" was a factor the Authority properly could consider in making the determination whether it was in the public interest to do so. The findings of the judge indicate that at its December 20, 1973, meeting the Authority board considered in a serious and deliberative fashion the problems raised by the union representative's letter, including the credibility of the threat and the consequences that would flow from its execution. A majority of the members of the board eventually came to the conclusion that in the circumstances it would be in the public interest to reject all bids. There appears no evidence of bad faith or arbitrary, capricious, or illegal action and, absent such evidence, we are not inclined to interfere with a decision of the Authority which is peculiarly within its jurisdiction. See *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham,* 330 Mass. 494, 496 (1953); *Slocum* v. *Medford,* 302 Mass. 251, 254-255 (1939). Cf. *Stretch* v. *Timilty,* 309 Mass. 267, 270-271 (1941); *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503, 505 (1908), appeal dismissed, 223 U.S. 749 (1911).

It should be noted that this is not a case in which a public body has restricted bidding for contracts within its domain to unionized firms only. See *Master Printers Ass'n* v. *Trustees of Junior College Dist. No. 508, City of Chicago & State of Ill.* 356 F. Supp. 1355 (N.D. Ill. 1973). As the trial judge correctly held, unionism is not a statutory requirement to be deemed "responsible" or "eligible," as those terms are used in G. L. c. 30, § 39M, and the statute itself would bar the automatic exclusion

of any bidder on the sole ground that the bidder employs nonunion workers.

Nor is this a case in which the Authority has acceded to union threats to cause labor trouble on projects or at work sites unconnected with the contract at issue. In *Long Island Signal Corp.* v. *County of Nassau,* 51 Misc. 2d 320 (N.Y. Sup. Ct. 1966), union officials threatened to cause a countywide work stoppage on all public works projects if a contract for the maintenance of traffic signals was awarded to the lowest bidder which was a nonunion shop. The court there held that the rejection of the lowest bidder based on these threats was not in the best interests of the county and, hence, was unlawful. In considering contracts let under G. L. c. 30, § 39M, we would be inclined to view with similar disfavor a contracting authority's accession to a similar union threat. The "harmony" clause of the statute speaks of the bidder providing "labor that can work in harmony with all other elements of labor employed or to be employed in the work" (§ 39M [*c*]), and clearly contemplates a situation in which the union and nonunion workers work in some type of proximity to one another. This clause does not provide a union with an invitation to use a threat to walk off a job of a totally unrelated nature at a different location as a means to coerce a public authority not to award a particular contract to a nonunion company. However, this is not the situation here. The drainage work at issue was to be performed at Logan International Airport, the situs of many ongoing, union-staffed construction projects. The judge found that both the drainage and the union projects were situated in those parts of the airport near operating aircraft. The Federal Aviation Administration had security regulations restricting access to these locations. A large security fence surrounded these operating areas, and there were only two gates through which all workers, vehicles and equipment could pass. The contract Modern bid on, although technically a separate project, required Modern's employees to work

in close proximity to, and to interact with, the workers on other construction projects at Logan International Airport. This is a situation diverse from that encountered in *Long Island Signal Corp.* v. *County of Nassau, supra.* See *Pallas* v. *Johnson,* 100 Colo. 449 (1937); *Keyes Elec. Serv.* v. *Chosen Freeholders of the County of Cumberland,* 15 N.J. Super. 178 (L. Div. 1951).

It follows that the judgment should be affirmed.

*So ordered.*