IMAGE CARRIER CORPORATION,
Plaintiff,

v.

Abraham D. BEAME, Mayor of New York City, et al., Defendants.

The HOUSE OF LITHOGRAPHY, INC., et al., Plaintiffs,

v.

Abraham D. BEAME, Mayor of New York City, et al., Defendants.

Nos. 74 Civ. 3155 (LFM), 75 Civ. 6443 (LFM).

United States District Court,
S. D. New York.

April 7, 1977.

Counihan, Casey & Loomis by James E. Anderson and Francis T. Coleman, Washington, D. C., Townley, Updike, Carter & Rodgers by Jerome P. Coleman, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel by H. Kenneth Wolfe, Asst. Corp. Counsel, New York City, for defendants.

Menagh, Trainor & Rothfeld by Norman Rothfeld, New York City, for intervenor defendant Allied Printing Trades Council of Greater New York.

## OPINION

MacMAHON, District Judge.

Plaintiffs, non-union printers, allege that defendants' practice of restricting bidding upon, and of awarding printing contracts to, only those printing establishments whose employees are represented by labor organizations and who can therefore exhibit the union label deprives them of an opportunity to bid on these contracts, in violation of their rights under the due process and equal protection clauses of the Fourteenth Amendment, and is contrary to New York

state law, the New York City Charter, and public policy. They seek a declaratory judgment and an injunction prohibiting that practice.

A non-jury trial was held before us on December 6, 1976 to determine these issues, and the following constitutes our findings of fact and conclusions of law.

Plaintiffs challenge the union label requirement on both federal constitutional and state law grounds, and since decision upon state grounds might avoid needless constitutional adjudication, we must consider, in light of the doctrine announced in *Railroad Comm'n of Texas v. Pullman Co.*,[1] whether abstention is appropriate.

■■■■ Abstention is an equitable doctrine and has its origins in principles of federalism and comity.[2] It serves to avoid needless friction with, and demonstrates proper respect for, state law and state courts. It is not a rule of necessity,[3] and the decision to abstain is vested in the sound discretion of the district court.[4] The doctrine is applicable only in special circumstances[5] and only when the issue of state

law is uncertain,[6] as it is here. We do not think, however, that abstention is warranted here because neither party has even raised, much less requested abstention, and the case, after considerable delay, has already been tried.[7] Furthermore, there is no vital state or city interest, nor elaborate regulatory program involved, and consequently the interference with the city's administration of its own affairs resulting from a determination that the union label requirement is invalid would be minimal.[8] Finally, the constitutional question, whether the union label policy violates the Fourteenth Amendment, is of very narrow compass.[9]

Under these circumstances, we think that the injustice of subjecting plaintiffs to added expense and delay outweighs the advantages which may accrue from adherence to the traditional policy of avoiding constitutional adjudication by abstention.[10]

The question of whether the union label requirement violates state law or the New York City Charter is sufficiently unsettled,[11] especially as compared to feder-

1.  312 U.S. 496, 500–01, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2.  See *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 328, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); *Railroad Comm'n of Texas v. Pullman Co., supra*, 312 U.S. at 500–01, 61 S.Ct. 643.

3.  See C. Wright, Law of Federal Courts § 19, p. 63 (2d ed. 1970).

4.  See *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

5.  See *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

6.  See *Harman v. Forssenius, supra*, 380 U.S. at 534, 85 S.Ct. 1177.

7.  *Hostetter v. Idlewild Bon Voyage Liquor Corp., supra*, 377 U.S. at 329, 84 S.Ct. 1293; see *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *California v. LaRue*, 409 U.S. 109, 124 n. 2, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); cf. *Provident Trademens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

8.  *Hostetter v. Idlewild Bon Voyage Liquor Corp., supra*, 377 U.S. at 329, 84 S.Ct. 1293; see *Harman v. Forssenius, supra*, 380 U.S. at 534, 85 S.Ct. 1177.

9.  Compare *Idlewild Bon-Voyage Liquor Corp. v. Epstein*, 212 F.Supp. 376, 382 (S.D.N.Y.1962) (three-judge court), aff'd sub nom. *Hostetter v. Idlewild Bon Voyage Liquor Corp., supra*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350, with *Railroad Comm'n of Texas v. Pullman Co., supra*, 312 U.S. 496, 61 S.Ct. 643, and *Public Utilities Comm'n v. United Fuel Gas Co.*, 317 U.S. 456, 463, 63 S.Ct. 369, 87 L.Ed. 396 (1943).

10.  *Idlewild Bon-Voyage Liquor Corp. v. Epstein, supra*, 212 F.Supp. at 380; see *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 196–97, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Chicago v. Atchison, T. & S. F. Ry.*, 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

11.  Union label requirements have been the subject of previous litigation in New York courts. An early case, *Davenport v. Walker*, enjoined the awarding of a contract on the basis of such a requirement, holding that the union label requirement was unconstitutional and clearly against public policy. *Davenport v. Walker*, 57 App.Div. 221, 68 N.Y.S. 161, 164 (1901). See

al constitutional precedent in this area,[12] to make a decision as to its validity on that basis inappropriate. We, therefore, proceed to consider the validity of the union label requirement under the due process and equal protection clauses.

There is no dispute that the Department of Purchase,[13] which awards all the printing contracts for New York City, the Board of Education [14] and the New York City Health and Hospital Corporation,[15] have adopted a policy requiring that all public printing work must be done in a union plant located in New York City and bear the union label, save for letterheads, noteheads or unless otherwise excepted. Defendants claim that this policy is justified because it rationally furthers legitimate municipal interests, even though it deprives plaintiffs of an equal opportunity to bid upon and to be awarded printing contracts.

We must determine, at the outset, whether the due process and equal protection guarantees of the Fourteenth Amendment are applicable to the award of public printing contracts in light of *Atkin v. Kansas* [16] and its progeny. The Supreme Court, in *Atkin,* upheld a Kansas statute which regulated the pay and limited the hours of employees of the state, its subdivisions and

public contractors. The Court stated that, since the work was of a public character, "it is for the State to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not, by its regulations, infringe the personal rights of others. . . ." [17]

Relying in part on *Atkin,* the court held, in *American Yearbook Co. v. Askew,*[18] that a Florida statute requiring all public printing to be done in the state was not violative of the equal protection clause because the award of such contracts was a proprietary, or a business, rather than a governmental function, and that, when a municipality or state acted in such capacity, it was exempt from the limitations of the equal protection clause.[19]

Since plaintiffs do not challenge the requirement here that public printing be done in a plant located in New York City, the specific holding in *American Yearbook* is inapplicable. Furthermore, that holding could be sustained on the principle that the equal protection clause is confined to persons within the jurisdiction of the state which enacted the challenged statute.[20] In any event, the Supreme Court has ruled

also *People ex rel. John Single Paper Co. v. Edgcomb,* 112 App.Div. 604, 98 N.Y.S. 965, 966 (1906).

However, two subsequent cases approved the requirement at issue in this case. *Burland Printing Co. v. LaGuardia,* 9 N.Y.S.2d 616, 618 (Sup.Ct.1938); *Amalithone Realty Co. v. City of New York,* 162 Misc. 715, 295 N.Y.S. 423, 425, aff'd, 251 App.Div. 450, 297 N.Y.S. 262 (1937). Recent New York decisions have cast doubt upon the present validity of the union label requirement and the continued vitality of the *Amalithone* and *Burland* cases. See *Apex Indus. Const. Corp. v. Village of Lake George,* 31 A.D.2d 670, 295 N.Y.S.2d 548, 549 (1968); *Long Island Signal Corp. v. County of Nassau,* 51 Misc.2d 320, 273 N.Y.S.2d 188, 194 (1966).

12. See *Master Printers Ass'n v. Board of Trustees of Junior College Dist. 508,* 356 F.Supp. 1355, 1357 (N.D.Ill.1973); see also *Anthony P. Miller, Inc. v. Wilmington Housing Authority,* 165 F.Supp. 275, 279–80 (D.Del.1958); Abstention in Constitutional Cases, 122 U.Pa.L.Rev. 1071, 1100 (1974).

13. See plaintiffs' Exhibit 1, Supplement to Standard Instructions to Bidders for Use in Printing Only, Form 23–L–46. Policy established in 1934.

14. See plaintiffs' Exhibit 3, Standard Form of Contract Proposal, Form C.E. 8 (Part 1). Policy established in 1939.

15. See plaintiffs' Exhibit 5, Memo dated December 3, 1971, from Mr. Brady, Assistant Sr. Vice-President, Finance, and Mr. Katz, Director, Procurement. Policy established 1971.

16. 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148 (1903).

17. *Id.* at 224, 24 S.Ct. at 128.

18. 339 F.Supp. 719 (M.D.Fla.1972) (three-judge court), aff'd without opinion, 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972).

19. *Id.* at 721–23.

20. *Township of River Vale v. Town of Orangetown,* 403 F.2d 684, 687 (2d Cir. 1968).

that the due process[21] and equal protection[22] guarantees are applicable to public employment. While the coverage afforded by these two guarantees often overlaps, the appropriate analysis under each is different.[23]

■ The Supreme Court has rejected the right-privilege distinction employed in due process analysis by *Atkin,* as well as a number of earlier cases.[24] Therefore, it no longer suffices to say that, although a government may not deprive someone of a right arbitrarily, it may do so in the case of a privilege.[25] However, the plaintiff must still demonstrate the deprivation of some liberty or property interest protected by the Fourteenth Amendment in order to invoke the due process guarantee.[26]

Plaintiffs here have not addressed themselves to the issue of whether their opportunity to bid on public contracts is one of liberty or property within the meaning of the due process clause, but we need not decide this issue since we have determined that the union label requirement violates the equal protection clause.

■ The equal protection clause is a more explicit safeguard than the due process clause,[27] and its coverage is not confined to deprivations of liberty or property. Although the Supreme Court held that the equal protection clause was not violated in *Atkin,* it clearly indicated that the clause is applicable to public employment regulations[28] and, as recently as *Massachusetts Board of Retirement v. Murgia,*[29] has subjected such regulations to equal protection scrutiny even though they were promulgated by the state in its proprietary capacity as an employer.

We see no justification in the case law, the language of the Amendment, or in reason for restricting the reach of the equal protection clause. Indeed, such a course would be fraught with danger to the very principles underpinning the Amendment. We, therefore, turn to the question of whether the union/non-union classification here violates the equal protection clause.

■ Traditional equal protection analysis is a two-tiered system. Strict scrutiny of a classification is required only if the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.[30] If not, then the classification is examined under the relatively relaxed rational basis standard, which requires only that the classification rationally furthers a legitimate purpose identified by the state,[31]

**21.** See *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 571–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). See also *Thompson v. Gallagher,* 489 F.2d 443, 446–47 (5th Cir. 1973).

**22.** See *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); cf. *Wieman v. Updegraff,* 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952). See also *Kotch v. Board of River Port Pilot Comm'rs,* 330 U.S. 552, 556, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Thompson v. Gallagher, supra,* 489 F.2d at 446–47; *Burt v. City of New York,* 156 F.2d 791, 792 (2d Cir. 1946); *Mando v. Beame,* 398 F.Supp. 569, 572 (S.D.N.Y.1975).

**23.** See *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); 87 Harv.L.Rev. 1842, 1844–45 (1974).

**24.** See *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**25.** See *Thompson v. Gallagher, supra,* 489 F.2d at 446.

**26.** See *Board of Regents v. Roth, supra,* 408 U.S. at 571–72, 92 S.Ct. 2701.

**27.** See *Bolling v. Sharpe, supra,* 347 U.S. at 499, 74 S.Ct. 693.

**28.** See *Atkin v. Kansas, supra,* 191 U.S. at 224, 24 S.Ct. 124.

**29.** 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); see *Thompson v. Gallagher, supra,* 489 F.2d at 446–47; *Mando v. Beame, supra,* 398 F.Supp. at 572.

**30.** See *Id.* at 312, 96 S.Ct. 2562; *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

**31.** See *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 312, 96 S.Ct. 2562; *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 40–41, 93 S.Ct.

and, under that standard, the classification is presumed valid.[32]  Since we find that the union label requirement does not satisfy the rational basis standard,[33] it is unnecessary to determine whether a strict scrutiny test should be applied.

Defendants contend that the union label requirement rationally furthers the city's interest in obtaining good quality work. The relevant equal protection inquiry, therefore, is directed to the quality of union, as opposed to non-union, printing. .

Plaintiffs' expert testified that the quality of work does not depend on the union or non-union status of the printing establishment and that, in general, the work required by the city did not require a high level of skill.  Moreover, three non-union printers testified that they could perform the work required by the city with the requisite degree of skill and competence. The roster of their representative clients confirmed the good quality of their work.

■ We find, therefore, in light of all the evidence, that there is no rational relationship between the union label requirement and the interest of the city in obtaining good quality work.

■ Defendants also contend that the union label requirement enables them to police effectively the city's policy that employees receive prevailing rates of wages. We think that justification is attenuated to the point of irrelevancy, but, in any event, it fails on other grounds.

The union label requirement was established by executive order in 1934 "to lend the greatest measure of aid and assistance during the present economic depression" to printing employees.[34]  That order also contained provisions establishing the policy that prevailing wages should be paid to printing employees and providing that if any question were raised as to the wage rates of the lowest bidder, the N.R.A. Compliance Board would be requested to submit a report on the bidder's compliance "with the code requirements."  We doubt that the union label requirement could rationally have been intended to ensure that the prevailing wage rate is paid to printers' employees because that requirement was unnecessary in light of these other provisions.[35]

Even assuming that the purpose was to ensure that the prevailing wage rate is paid, the evidence here refutes defendants' contention that the challenged classification rationally furthers that purpose.  We will assume, *arguendo,* that Section 220 of the New York State Labor Law sets the prevailing wage rate, as defendants contend.[36] That statute defines "the prevailing rate of wages" as that rate paid to the majority of workmen, laborers or mechanics in the same trade.  It does not mention labor unions.

The only testimony before us concerning the employment status of the "majority of workmen, laborers or mechanics" in the

1278;  *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

**32.**  See *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. 2562; *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 40–41, 93 S.Ct. 1278.

**33.**  See *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. 2562.

**34.**  See plaintiffs' Exhibit 2, Extract from Minutes of Meeting of Board of City Record, held April 12, 1934.

**35.**  See *United States Dep't of Agriculture v. Moreno,* 413 U.S. 528, 536–37, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973);  *Eisenstadt v. Baird,* 405 U.S. 438, 452, 92 S.Ct. 1029, 31 L.Ed.2d 349

(1972).  See also Fair Labor Standards Act, 29 U.S.C. § 206;  N.Y. Labor Law §§ 220, 652; Administrative Code of City of New York § 343–9.0(a)(1), (f).

**36.**  But see 3 Op. State Compt. 293 (1947);  1943 Op.Atty.Gen. 110, 111.  There is nothing in the order establishing the prevailing wage rate policy to determine how that rate is to be determined other than the oblique and tangential reference to "code requirements," presumably a "code of fair competition" promulgated pursuant to the National Industrial Recovery Act, which was declared unconstitutional in 1935. See *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).

printing trade is that there are 350 non-union, as compared to 250 union, shops in a trade association known as Printing Industries of Metropolitan New York. This evidence indicates that the prevailing wage rate, as defined by the statute on which defendants rely, follows the non-union rate more closely than the union rate and, therefore, undermines defendants' contention that the union label requirement safeguards payment of the prevailing wage rate.

Moreover, plaintiffs' expert testified that there is no correlation between the union or non-union status of a printing company and the wage rates it pays to its employees; some non-union rates are as high or higher than some union rates. He further testified that union rates vary considerably.

Union rates, therefore, do not necessarily meet the prevailing wage rate. More fundamentally, there is no evidence here of any natural,[37] logical,[38] or necessary correlation between the union wage rate and the prevailing wage rate. Nor is there any evidence showing any reason why non-union rates might not approximate the prevailing wage rate as closely as union rates. The presumption of validity must yield to the evidence which showed that there was no logical or even statistical correlation between the prevailing wage rate and the union or non-union status of the printing company. We, therefore, conclude that the challenged classification does not rationally further the city's interest in safeguarding the payment of prevailing wages.

■ The other arguments advanced by defendants in support of the union label requirement are equally unpersuasive. Their contention that the requirement facilitates policing of printers' claims for overtime wages because union rates are more easily ascertainable is refuted by the undisputed testimony of plaintiffs' expert that all overtime rates must be specified in every contract.

■ Defendants further argue that the city is benefitted by the union label requirement because it results in better quality work due to the fact that the union operates schools which keep abreast of the latest technology. The relevant inquiry, however, is not whether the union conducts training programs but the comparative effectiveness of union versus non-union programs. Here, again, the only evidence before us is the undisputed testimony of plaintiffs' expert witness that the on-the-job training programs of non-union shops are at least as, and perhaps more, effective than training programs typically conducted outside the shop by the unions. Moreover, we have previously found that there is no correlation between the quality of work and the union or non-union status of the printing shop. Finally, the evidence refutes defendants' contention that the union label policy obviates the need for inspections of printing shops, and we reject it.

■ Accordingly, we find that defendants' policy and practice of restricting bidding upon, and of awarding printing contracts to, only those printing establishments whose employees are represented by labor organizations and who can, therefore, exhibit the union label violates the equal pro-

**37.** See *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520, where the Supreme Court concluded that mandatory retirement at age 50 for uniformed policemen rationally furthered the state's purpose of protecting the public by assuring the physical preparedness of its uniformed police because fitness for uniformed work generally and naturally diminishes with age.

**38.** See *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), where the Supreme Court upheld a Maryland statute whose purpose was to rid Maryland of auto hulks, requiring more extensive documentation from out-of-state than in-state unlicensed hulk suppliers. The Court found the Legislature could reasonably assume that a hulk destroyed by an out-of-state processor was more likely to have been abandoned outside the state and that the documentation requirement, by making it easier for an in-state than an out-of-state processor to receive bounties, tended to ensure that the state's limited resources were targeted to hulks abandoned inside Maryland.

tection clause of the United States Constitution.[39]

The foregoing constitutes our findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R.Civ.P.

Settle an order within ten (10) days not inconsistent with this opinion.

**39.** See *Master Printers Ass'n v. Board of Trustees of Junior College Dist. 508, supra*, 356 F.Supp. at 1357; accord, *State ex rel. United Dist. Heating, Inc. v. State Office Bldg. Comm'n*, 124 Ohio St. 413, 179 N.E. 138, 139 (1931); 125 Ohio St. 310, 181 N.E. 129 (1932); *Marshall & Bruce Co. v. Nashville*, 109 Tenn. 495, 71 S.W. 875, 816–19 (1903). See also Annot., 110 A.L.R. 1406.